# Staunton

## HERMAN TAYLOR AND NATHANIEL TAYLOR V. COMMONWEALTH OF VIRGINIA.

September 3, 1947.

Record No. 3247.

Present, Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*William Davis Butts*, for the plaintiffs in error.

*Abram P. Staples, Attorney General*, and *Henry T. Wickham, Special Assistant*, for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The two accused were found guilty of using abusive language to another under Code, 1942 (Michie), section 4536,

and their punishments fixed at a fine for each of $250. They contend upon this writ of error that the evidence was insufficient to sustain the conviction.

A short time after dark on August 24, 1946, a taxicab driven by one Ben J. Harrell collided with an automobile driven by Fred Taylor. Riding with Fred Taylor were four other men, two of whom were the accused. Fred Taylor and Harrell each contended that the other was at fault in bringing about the collision. After the collision Harrell drove his taxicab into Al's cab stand and was followed closely by the automobile of Fred Taylor in which the two accused and the others were riding. Harrell sought help from one Proctor, the dispatcher in the office at the cab stand. One of the men who got out of the car driven by Fred Taylor went into the taxi stand and pulled Proctor out of his office, using violent and threatening language. He had a bottle in his hand. Proctor could not get back into his office so the people who lived next door called the police. After arriving at the stand Fred Taylor, the operator of the car in which the other four men were riding was reasonable, did not swear, was in a cooperative mood to make peaceable settlement of their differences, and took no part in the disturbance. The testimony shows that the two accused were riding in the back seat of the car with one McFarland, and Guy Taylor was riding on the front seat with Fred Taylor at the time the collision occurred and when they drove into the cab stand.

The evidence is overwhelming that violent, abusive and obscene language was used at the cab stand. There seems to be no real contradiction of this fact. However, the accused contend that the evidence fails to point to them as the persons using the language.

The statute is as follows: "If any person shall, in the presence or hearing of another, curse or abuse any person, or use any violent abusive language to such person concerning himself or any of his female relations, under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a misdemeanor, and on convic-

tion fined in any sum not less than two dollars and fifty cents nor more than five hundred dollars, in the discretion of the justice trying the case." (Sec. 4536.)

We are only interested in the cases of the two accused prosecuting this appeal. Fred Taylor was fined in the court below for leaving the scene of the accident and no writ of error was sought in his case. He was not charged with violating the quoted statute. McFarland's case was not ready for trial. There was no evidence against Guy Taylor. We will not repeat the language used upon this occasion. Suffice it to say it was abusive and obscene and concerned a female relative of Harrell, to whom the language was addressed. It was such as to provoke a breach of the peace. It came directly within the terms of the statute.

In the trial court Fred Taylor and the two accused were sitting together in the court room. Proctor, the cab dispatcher, went on the stand and pointed out the two accused as the ones who came into his office. He identified them as "the one in the middle," and, "the other on the end." The third man was Fred Taylor, with whom we are not involved.

One Olan Campbell, another taxicab driver, drove into the station at the time, and in answer to the question, "Did they have any protection in there?", replied, "No, we haven't. He said 'call the law, these guys are after me.' He reached to call the law and someone snatched the receiver out of his hand. They pushed him out and they grabbed him and said, 'You aren't going to tell anybody nothing.' They were using a lot of profanity around there."

Harrell, the prosecuting witness, testified in answer to the question, "Which one got out of the car?",—"This one, I think. (Pointing to the man in the middle of the three.) He tried to take me out of the car. I taken off and got to Al's cab stand. I saw a boy sitting in the office. It was Proctor, the dispatcher. I turned into the office and he said, 'What's the trouble.' They came into the office behind me. One of them snatched Proctor out of the office. He had a bottle in his hand. * * * "

Harrell, in answer to the question, "Do you know whether any of these three did any cursing," answered, "These two boys did but Fred didn't." Fred and the two accused were sitting together. Fred thus being eliminated, "these two boys" could have referred only to the accused.

The two accused were under the influence of liquor. Proctor, at another point in his testimony, in answer to the question, "Did anyone use any bad language?", replied, "All except one. He isn't here. He wasn't arrested on the charge."

From the testimony it is clearly shown that Herman Taylor and Nathaniel Taylor, the two accused, were sitting with Fred Taylor at the trial, and that abusive language in violation of the statute was used to another by two of them, and that Fred Taylor did not use this kind of language at the time. This is sufficient to point out Herman Taylor and Nathaniel Taylor as the men who violated the statute.

For these reasons the judgments are affirmed.

*Affirmed.*