Insulting a peace officer; fine, one hundred dollars.
On March 18, 1975, the City of Birmingham through its prosecuting attorney, filed a complaint in Jefferson County Circuit Court, charging appellant: ". . . did *Page 934 
make an insulting remark to W.P. Curry, a law enforcement officer of the City of Birmingham, while said officer was engaged in the active discharge of his lawful duties in this: the said James Skelton referred to the officer as a `Big Shit' . . ."
To this complaint, the appellant filed a demurrer alleging the statute upon which the complaint was based was vague, indefinite, overbroad, and a violation of his constitutional rights under the First and Fourteenth Amendments.
The demurrer was overruled and on the consent of the parties, trial was had before the judge without the benefit of a jury.
This appeal brings into focus the facial constitutionality of § 36-56 of the General Code of Birmingham of 1964, as it adopts the words and language of § 374 (18) of T. 14, Code of Alabama 1940, Recompiled 1958, 1973 Cum.Supp. to Vol. 5.
Section 374 (18) of T. 14, supra provides:
 "Whenever any peace officer or other law-enforcement officer of this state or any political subdivision of this state shall be engaged in the active discharge of his lawful duty or duties, it shall be unlawful for any person to make any insulting remark, either to or about such officer or to make any motion, or gesture calculated to insult or humiliate such officer because of his performing such duty or duties, or to threaten harm or injury to such officer in performance of his duty or duties, and any person committing any act made unlawful hereunder shall be guilty of a misdemeanor . . ."
Appellant's conviction thereunder, resulted from the following facts:
On November 3, 1974, officers William P. Curry and Thomas W. Cater were employed by the City of Birmingham Police Department and working the 11 P.M. to 7 A.M. shift. These officers were riding in a marked police cruiser, equipped with police insignia and blue light on top.
Approximately 6:45 A.M., Officer Curry drove the police car into an alley facing west. The alley extended east and west and crossed a sidewalk paralleling Birmingham's 20th Street which ran north and south. At that point where the car entered the alley, the sidewalk crossed the alley and the car was stopped in the path of the sidewalk. Curry left the car and walked to a news stand in front of "Tutwiler Drug", which is in a building adjacent to the alley. After purchasing a newspaper, he started back to the car. At this time, the appellant who was standing on the north side of the alley, made the following statement:
 "`Are you big shits going to move your car, or are you going to make me walk around?'"
Curry stated that the remarks were made in his direction. After the statement was made, Curry walked around to the rear of the car and arrested the appellant.
Officer Cater stated that on the above date, he was working as Officer Curry's partner and testified to the same facts, with the exception that he could not tell to whom the remark was directed. Cater said it was his impression, the statement was something to the effect:
 "Are you big shits going to move or am I going to have to go around."
The appellant did not testify or produce any evidence in his behalf and the case went to the trier of the fact on the testimony of the officers alone.
Appellant cites several United States Supreme Court decisions in support of his argument that the statute in question is so vague and broad it violates the freedom of speech guaranteed by the First Amendment. Among the cases cited to us, the prominent ones are: Lewis v. New Orleans, 415 U.S. 130, 94 S.Ct. 970,39 L.Ed.2d 214; and Gooding v. Wilson, 405 U.S. 518,92 S.Ct. 1103, 31 L.Ed.2d 408. However, we find the answer to this contention in the case of Chaplinsky v. New Hampshire,315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031.
In Chaplinsky, supra, the United States Supreme Court upheld the following ordinance against the charge of vagueness:
 "`No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or *Page 935 
other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation.'"
The provocative remarks used by Chaplinsky were addressed to a town marshal and were as follows:
 "`You are a God damned racketeer' and `a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists' . . ."
In affirming Chaplinsky's conviction by the state court, the United States Supreme Court recognized that the right of free speech is not absolute at all times and under all circumstances. There are certain well defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any constitutional questions. They include the lewd, obscene, profane, the libelous, and the insulting and, or fighting words.
As was stated in Cantwell v. Connecticut, 310 U.S. 296,60 S.Ct. 900, 84 L.Ed. 1213:
 "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument."
The United States Supreme Court concluded that the ordinance as construed by the state court in Chaplinsky, supra, was limited to verbal acts uttered under such circumstances as were likely to cause the breach of peace. The court held that the words used by Chaplinsky were:
 ". . . epithets likely to provoke the average person to retaliation, and thereby cause a breach of peace."
The appellant relies heavily on the case of Gooding v.Wilson, supra, where a Georgia statute was struck down because it was overbroad in its application and susceptible of First Amendment violations. The Georgia statute struck down inGooding v. Wilson, reads as follows:
 "`Any person who shall, without provocation, use to, or of one another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the peace . . . shall be guilty of a misdemeanor.'"
In Gooding v. Wilson, supra, the Supreme Court of the United States, said that the state courts have failed to narrow the application of the statutes to fighting words, which by their very utterance will tend to incite an immediate breach of the peace and, therefore, the statute was facially overbroad, vague and unconstitutional under the First and Fourteenth Amendments.
To emphasize this particular point, the court used the following language:
 "Because earlier appellate decisions applied § 26-6303 to utterances where there was no likelihood that the person addressed would make an immediate violent response, it is clear that the standard allowing juries to determine guilt `measured by common understanding and practice' does not limit the application of § 26-6303 to `fighting' words defined by Chaplinsky. Rather, that broad standard effectively `licenses the jury to create its own standard in each case.' Herndon v. Lowry, 301 U.S. 242, 263, 57 S.Ct. 732, 741, 81 L.Ed. 1066, (1937). Accordingly, we agree with the conclusion of the District Court, `[t]he fault of the statute is that it leaves wide open the standard of responsibility, so that it is easily susceptible to improper application.'"
The standard for applying the Georgia statute was stated inFish v. State, 124 Ga. 416, 52 S.E. 737 (1905), there the Georgia Supreme Court held that a jury question was presented by the language: "`You swore a lie.'" In Fish v. State, the standard set for the jury by the state court under the statute was as following:
 "On the trial of one indicted for using opprobrious words and abusive language, it is for the jury to determine whether under all the facts and circumstances the words used were of such character as that the use of them was calculated to cause a breach of the peace, as well as to *Page 936 
determine whether there was provocation sufficient to excuse their use."
Another Georgia case cited in Gooding v. Wilson, supra, stated:
 "Plainly, although `conveying . . . disgrace' or `harsh insulting language,' these were not words by `which by their very utterance . . . tend to incite an immediate breach of the peace.'"
In Gooding v. Wilson, supra, officers were attempting to restore public access to a building when they were met by physical restraint and loud personal abuse: "`White son of a bitch, I'll kill you' and "You son of a bitch, I'll choke you to death'", and "`You son of a bitch, if you ever put your hands on me again, I'll cut you all to pieces,' . . ."
The Supreme Court concluded in Gooding v. Wilson, supra, that the statute swept beyond the bounds of the fighting words limitations of Chaplinsky v. New Hampshire, supra.
The next case cited to us by appellant in support of his contention is, Lewis v. City of New Orleans, supra, wherein an appellant and her husband were stopped by a police officer. The officer testified that while he was waiting for the appellant's husband to produce his driver's license, appellant came out of their truck "`and started yelling and screaming that I had her son or did something to her son and she wanted to know where he was . . .'" The officer said, "`lady, I don't have your son and I am not talking to you. I am talking to this man and you can go sit in the truck.'" The appellant said, "`you god damn m.f. police — I am going to Giarrusso [the police superintendent] to see about this.'"
The appellant was arrested and charged with reviling the police officer under the Louisiana statute which reads:
 "It shall be unlawful for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty."
The Supreme Court of the United States remanded the case to the Louisiana court for reconsideration in light of Gooding v.Wilson, supra. The Louisiana Supreme Court on remandment, stated that the statute was narrowed to "fighting words" uttered to specific persons at a specific time. The Supreme Court of the United States observed that the Louisiana Supreme Court did not refine or narrow the words as were used but took them as they stood.
In speaking of the Louisiana statute, the Supreme Court said:
 ". . . § 49-7 plainly has a broader sweep than the constitutional definition of `fighting words' announced in Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), and reaffirmed in Gooding v. Wilson, supra, 405 U.S., at 522, 92 S.Ct. at 1106, namely, `those [words] which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'"
The Supreme Court went on to say that the Louisiana Supreme Court undoubtedly contemplated a broader reach of the ordinance because it emphasized the city's justification for regulating the conduct of any person toward members of the police department while they were engaged in the performance of their duty.
Further, the Supreme Court observed that the dictionary definitions of the term opprobrious "embraced words `conveying or intended to convey disgrace'" and therefore the term was not limited to words which by their utterance inflict injury or tend to incite an immediate breach of the peace.
The statute before us has never been construed by this court. It is proclaimed to be an area in which the State may only regulate with narrow specificity.
As we construe § 374 (18) of T. 14, supra, the insulting remarks are those narrowed to fighting words only; they are those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a *Page 937 
swift physical retaliation and incite an immediate breach of the peace. As Kipling so aptly wrote:
 "You may call a man a thief and risk nothing. You may even call him a coward without finding more than a boot whiz past your ear, but you must not call a man a bastard unless you are prepared to prove it on his front teeth."[1]
The test of whether the insulting remarks are fighting words is not to be determined by the addressee. The test we adopt today is that laid down in Chaplinsky v. New Hampshire, supra. There the court said:
 "The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight."
The statute we presently have under consideration is more limited and restrictive in scope than any of the ordinances or statutes in the authorities cited above. The statute prohibits verbal assaults as well as physical or bodily assaults on a police officer in the performance of his duties.
We construe the verbal acts prohibited, as strictly limited to words having a direct tendency to cause the violent reaction by the particular officer-addressee. In short, the statute requires that the words be calculated to cause an immediate breach of the peace. It is not enough it they merely arouse anger or resentment.
Implicit in the statute is the purpose to offer the officer a legal alternative to violence. It offers the police officer redress through the judicial process, rather than to rely on more immediate and more primitive means of obtaining satisfaction.
In light of the result reached, we do not have occasion to decide the question of whether words attributed to this defendant constitute fighting words or come within some specific classification which may be protected by the Constitution of the United States.
For the above reason, we are of the opinion that the judgment and the sentence appealed from, must be reversed and the same is hereby reversed and remanded with instructions that any future trial will be conducted with an eye to the construction that we place on the statute today.
REVERSED AND REMANDED.
TYSON, HARRIS and BOOKOUT, JJ., concur.
[1] R. Kipling, The Drums of the Fore and Aft, in Under the Deodars the Phantom `Rickshaw Wee Willie Winkie (New rev'd ed. 1899, MacMillan Co., Ltd.)