Initially, I must express my disapproval of and objection to the manner in which the majority treats the facts of this case.
I agree that the complaint pursuant to Ala. Code 1975, §13A-11-8(b), was improperly amended to charge an offense pursuant to § 13A-11-8(a). All complaints, even those which donot introduce a "new or different offense," are "absolutely nonamendable without the consent of the defendant" under Rule 15.5, Ala.R.Crim.P. Temp. Mason v. City of Vestavia Hills,518 So.2d 221, 223 (Ala.Cr.App. 1987). If they introduce a new or different offense, they are non-amendable even with the consent of the defendant. See Id.
"[A] person [may] use reasonable force to resist an unlawful arrest." Commentary to Ala. Code 1975, § 13A-3-28 at 71; Commentary to § 13A-10-41 at 380. Ms. Shinault's conviction for resisting arrest is due to be reversed because her arrest for harassment was unlawful.
Officer Treadway's arrest of Ms. Shinault was unlawful because the prosecution did not prove that Shinault committed the misdemeanor of harassment in Treadway's presence — not because Treadway, at some point during the encounter, "became a trespasser" on Shinault's property.
As the majority points out, the crime of "harassing communications" under § 13A-11-8(b) is inapplicable here, since a person commits that offense only if he communicates via telephone, electronic means, telegraph, or mail. A person commits the crime of "harassment" under § 13A-11-8(a) if he:
 "a. Strikes, shoves, kicks or otherwise touches a person or subjects him to physical contact; or
 "b. Directs abusive or obscene language or makes an obscene gesture towards another person."
The evidence indicates that Officer Treadway "began the process of arresting Ms. Shinault for harassment"before she struck or made any "physical contact" with him. Therefore, Treadway's arrest of Ms. Shinault for harassment could be lawful only if she violated subsection (b) in his presence. Subsection (b) proscribes conduct virtually identical to that proscribed in the disorderly conduct statute:
 "A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
". . . .
 "(3) In a public place uses abusive or obscene language or makes an obscene gesture."
Ala. Code 1975, § 13A-11-7(a)(3) (emphasis added). The "abusive or obscene language" provision of the disorderly conduct statute "is very narrow and applies only to 'fighting words.' "Mosley v. City of Auburn, 428 So.2d 165, 166 (Ala.Cr.App. 1982), superceded on other grounds, Mason v. City of Vestavia Hills,518 So.2d 221 (Ala.Cr.App. 1987).
 "This Court has defined 'fighting words', in light of the United States Supreme Court decisions in Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), as follows:
 " '[T]hey are those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical *Page 700 
retaliation and incite an immediate breach of the peace.'
 "Skelton v. City of Birmingham, 342 So.2d 933, 936-37 (Ala.Cr.App.), remanded [on other grounds], 342 So.2d 937 (Ala. 1976).
 ". . . As we observed in Skelton, construing a similar Code provision:
 " '[T]he statute requires that the words be calculated to cause an immediate breach of the peace. It is not enough . . . they merely arouse anger or resentment.'
342 So.2d at 937 (emphasis added)."
Swann v. City of Huntsville, 455 So.2d 944, 950
(Ala.Cr.App. 1984). In Swann, we observed that the accused's use of profanity to the arresting officer "may have aroused the anger and resentment" of the officer, but that it was not "calculated to provoke physical retaliation, especially in view of the probable training received by the officer in dealing with similar situations." Id.
Unfortunately, epithets such as "son of a bitch" directed at a police officer in the performance of his duties are not uncommon in today's law enforcement environment. The fact that an officer encounters such vulgarities with some frequency, and the fact that his training enables him to diffuse a potentially volatile situation without physical retaliation, however, means that words which might provoke a violent response from the average person do not, when addressed to a police officer, amount to "fighting words." See generally Annot., 14 A.L.R.4th 1252 (1982).