Richmond

CHARLES HERSHFIELD

v.

COMMONWEALTH OF VIRGINIA

No. 1360-90-2

Decided May 5, 1992

COUNSEL

Charles Hershfield, pro se.

(Robert Q. Harris, Assistant Attorney General; Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

KOONTZ, C.J.—In a bench trial, Charles Hershfield was convicted of using abusive language in violation of Code § 18.2-416. He was sentenced to ten days in jail and a fine of $250. The jail sentence and $200 of the fine were suspended upon the condition that Hershfield keep the peace and be of good behavior for twelve months. On appeal, Hershfield contends that the evidence was insufficient to prove that he violated Code § 18.2-416. He also contends that he was denied his right to a jury trial as provided by Article I, § 8 of the Virginia Constitution, because the record does not show the consent of the defendant, the Commonwealth, or the trial court in the waiver of a jury trial. Because we find that the evidence was insufficient to support Hershfield's conviction under the abusive language statute, we do not reach the issue of whether he was unconstitutionally denied a jury trial.

The facts are not in dispute. Hershfield and Mary Walker were neighbors on Horton Street in Colonial Beach, Virginia. On April 2, 1990, Walker and her sister-in-law, who lived next door, were talking outside of Walker's home. The two noticed Hershfield, who lived two houses away from Walker's house, standing in his yard looking at them. Walker testified that she was facing Hershfield and her sister-in-law had her back to the defendant; no one else was in the area. Walker saw Hershfield make a motion with his hand which she described as "giving me the finger," and heard him say, "go f____ yourself."

When Hershfield made the comment and the hand gesture, he was standing fifty-five to sixty feet away from Walker and was separated from her by a chain-link fence. Walker then walked over to her sister-in-law's property and asked Hershfield why he was harassing her, but he refused to speak to her. Hershfield's conviction was based upon the testimony of Walker, who was the only witness to testify at trial.

Code § 18.2-416 provides:

If any person shall, in the presence or hearing of another, curse or abuse such other person, or use any violent abusive language to such person concerning himself or any of his relations, or otherwise use such language, under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a Class 3 misdemeanor.

In *Mercer v. Winston*, the Virginia Supreme Court considered a challenge to the constitutionality of Virginia's abusive language statute. 214 Va. 281, 199 S.E.2d 724 (1973) (interpreting former Code § 18.1-255), *cert. denied*, 416 U.S. 988 (1974). Relying upon *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), the Court found that the statute did not impair freedom of expression when applied to "fighting words." *Mercer*, 214 Va. at 284, 199 S.E.2d at 726. Thus, application of the statute is limited "to words that have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." *Id*. With this narrow construction, the statute is neither unconstitutionally vague nor overbroad. *Id*.

A conviction under Code § 18.2-416 must be supported by evidence that abusive language is spoken to or about another in his presence or hearing and under circumstances reasonably calculated to provoke a breach of peace. Assuming, without deciding, that the language Hershfield used is prohibited by the statute, we must next consider whether that language was spoken in Walker's presence or hearing and under circumstances likely to provoke a breach of the peace.[1]

---

[1] We do not decide whether the hand gestures used by Hershfield fall within the proscription of Code § 18.2-416. Our holding is limited to the words spoken by him. Furthermore, we acknowledge that while these words were vulgar, insulting, offensive and disrespectful, they are not necessarily "fighting words" as contemplated by *Chaplinsky* and subsequently in *Gooding v. Wilson*, 405 U.S. 518 (1972). Where, unlike here, it is necessary to determine whether specific language constitutes "fighting words" the bench and bar of this Commonwealth will find helpful guidance in the following additional cases. *Eaton v. City of Tulsa*, 415 U.S. 697 (1974); *Lewis v. City of New Orleans*, 415 U.S. 130 (1974); *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971); *Ware v. City & County of Denver*, 182 Colo. 177, 511 P.2d 475 (1973); *Rozier v. State*, 140 Ga. App. 356, 231 S.E.2d 131 (1976); *Diehl v. State*, 294 Md. 466, 451 A.2d 115 (1982), *cert. denied*, 460 U.S. 1098 (1983).

Viewing the evidence in the light most favorable to the Commonwealth, *Josephs v. Commonwealth*, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc), the record reflects that some neighborhood enmity had developed between Hershfield and the local government concerning the way Hershfield maintained his home. Walker's brother was on the town council. Walker testified that she was standing fifty-five to sixty feet away from Hershfield when she heard the comments. The evidence shows that the parties were separated by the front yard of Walker's sister-in-law's house, a distance of fifty-five to sixty feet, and a chain-link fence.

■ The requirement that the abusive language be spoken in the presence or hearing of another contemplates a face-to-face encounter. As the Virginia Supreme Court stated, the statute "is aimed at preventing personal, face-to-face, abusive and insulting language likely to provoke a violent reaction and retaliation." *Mercer*, 214 Va. at 284, 199 S.E.2d at 726; *see also Chaplinsky*, 315 U.S. at 573 (statute does no more than prohibit "face-to-face" words likely to incite a breach of peace). The fact that the parties were separated by a distance of fifty-five to sixty feet and by a fence establishes as a matter of law that the language was not spoken "face-to-face." Moreover, these circumstances also establish that the words were not reasonably likely to provoke an "immediate" violent response or retaliation. Specifically, distance and the barriers between Hershfield and Walker precluded "an immediate. . . violent reaction" by Walker. *See Mercer*, 214 Va. at 284, 199 S.E.2d at 726.

■ The trial court found that the statements were made in Walker's presence as required by Code § 18.2-416 because Walker saw Hershfield's hand gesture and heard what he said. While Walker may, in fact, have heard the remarks, abusive words even if heard by another, must be spoken "face-to-face," as contemplated by *Mercer*. In other words, although the abusive language may have been uttered in the "presence" of another in the sense that the alleged victim could see and hear the offender, that fact does not establish that the encounter was "face-to-face." Therefore, to the extent that Code § 18.2-416 proscribes abusive language literally uttered within the "presence or hearing" of another when the parties are not "face-to-face," it is inconsistent

with *Mercer* and, therefore, unconstitutional.[2]

The facts at issue in the present case are markedly different from those presented in *Mercer* and *Chaplinsky*. *Mercer* involved a public disturbance with racial overtones that "approached near riot proportions." 214 Va. at 282, n.1, 199 S.E.2d at 724-25, n.1. Mercer was convicted under Virginia's abusive language statute for uttering the following language to a police officer: "you white son of a bitch," "you honky pig," "you white mother f[_____]r," "white bastard" and "pig." *Id.* There was no evidence of any appreciable distance or barrier that would have prevented an immediate violent response.

In *Chaplinsky*, the defendant was convicted under New Hampshire's fighting words statute for saying to the City Marshal "You are a God damned racketeer" and "a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists." 315 U.S. at 569. Chaplinsky, a Jehovah's Witness, was distributing literature on a city street. When Chaplinsky began denouncing all religion as a racket, a crowd that had gathered became restless and a disturbance resulted. Chaplinsky was being taken to the police station when he uttered these statements to the City Marshal. The United States Supreme Court found that these words, spoken "face-to-face," were plainly likely to cause a breach of the peace. *Id.* at 573. Here, in the context of a private incident between two neighbors separated by a front yard and a fence, the language was not uttered in a "face-to-face" confrontation.

Our holding here is not inconsistent with *Burgess v. City of Virginia Beach*, 9 Va. App. 163, 385 S.E.2d 59 (1989). In *Burgess*, the defendant stuck his head out of his moving vehicle and yelled, "F_____ cops," as he drove by a street corner where police were attempting to control a large crowd. 9 Va. App. at 165, 385 S.E.2d at 60. Burgess was convicted of using abusive language in violation of Virginia Beach City Code § 23-12, which parallels the language of Code § 18.2-416. Although we recognized that *Mercer* requires a face-to-face confrontation, the case was not de-

---

[2] We do not hold that there must be a certain minimum distance between the parties in order to satisfy the "face-to-face" requirement. The distance, if any, at which an encounter becomes "face-to-face" under the statute depends, necessarily, on the circumstances in each case. We hold merely that the "face-to-face" requirement contemplated by *Mercer* has not been satisfied here.

cided on those grounds. Rather, *Burgess* involved the issue of whether a police officer would be held to a higher standard of restraint than the ordinary citizen. Without addressing Burgess's contention that his conduct did not amount to a direct confrontation under *Mercer*, we held that the fact that the abusive language was addressed to a police officer was of no consequence. Thus, in *Burgess*, we did not decide whether the face-to-face requirement had been met. 9 Va. App. at 167, 385 S.E.2d at 61.

For these reasons, the judgment of the trial court is reversed and the charge against Hershfield is dismissed.

*Reversed and dismissed.*

Duff, J., concurred.

Benton, J., concurring.

Decisions from the United States Supreme Court post-*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), have made it clear that legislatures may not criminalize on a per se basis the use of vulgar or offensive words. *See Gooding v. Wilson*, 405 U.S. 518 (1972); *Cohen v. California*, 403 U.S. 15 (1971). In order for statutes such as Code § 18.2-416 to be valid, they may punish only those words that fall within a " 'narrowly limited [class] of speech' . . . 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.' " *Gooding*, 405 U.S. at 522 (quoting *Chaplinsky*, 315 U.S. at 571, 572). Those words have come to be known as "fighting words." *Gooding*, 405 U.S. at 522. In *Gooding*, the accused was convicted under a statute which forbade the use of "opprobrious words or abusive language tending to cause a breach of the peace." *Id.* at 524. The Supreme Court reversed the conviction, holding that "[d]erisive and annoying words can be taken as coming within the purview of the statute . . . *only when they have this characteristic of plainly tending to excite the addressee to a breach of peace.*" *Id.* at 523 (quoting *State v. Chaplinsky*, 91 N.H. 310, 313, 320-21, 18 A.2d 754, 758, 762 (1941)) (emphasis added).

I agree with the majority that, in *Mercer v. Winston*, 214 Va. 281, 199 S.E.2d 724 (1973), *cert. denied*, 416 U.S. 988 (1974), the Supreme Court of Virginia gave Code § 18.2-416 a narrowly drawn interpretation to save it from constitutional infirmity. *Compare Gooding*, 405 U.S. 518 (1972), *with Chaplinsky*, 315 U.S. 568 (1942). The *Mercer* decision determined that the statute "was

aimed at preventing personal, face-to-face, abusive and insulting language likely to provoke a violent reaction and retaliation." 214 Va. at 284, 199 S.E.2d at 726. Consequently, the Court "limit[ed] [the] application [of the statute] to words that have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." *Id.* Consistent with this limiting construction, and because the statute criminalizes the use of language, the Court further construed the statute to prohibit only *"words of a kind and nature spoken under such circumstances as by their utterance reasonably tend to provoke a breach of the peace." Id.* (emphasis added).

Thus, in determining whether a violation has occurred it becomes necessary first to analyze the words spoken in order to determine whether they are "fighting words." "Fighting words" are personally abusive epithets that are inherently likely to induce the ordinary person to react violently. *Cohen,* 403 U.S. at 20. The majority correctly explains that the constitutional application of this statute depends upon whether "fighting words" were spoken in Walker's presence and whether these words were spoken under circumstances likely to provoke a breach of the peace. I believe, however, that the majority's holding that the conviction cannot stand solely because the parties were separated by sixty feet and a fence, thus leaving the "face-to-face" requirement of the statute unsatisfied, leaves the impression that Hershfield's utterance was inherently within the category of "fighting words." I would hold that they were not.

"Fighting words" are " 'personally abusive epithets' and not merely [words that are deemed] a socially unacceptable mode of communication." *State v. Authelet,* 385 A.2d 642 (R.I. 1978). The evidence must establish that the personally abusive utterance itself "tends to incite an immediate breach of the peace," *Lewis v. City of New Orleans,* 415 U.S. 130, 132 (1974)(citation omitted); is "inherently likely to provide violent reaction," *Cohen,* 403 U.S. at 20; or is "likely to provoke a violent reaction and retaliation." *Mercer,* 214 Va. at 284, 199 S.E.2d at 726. "It is not enough that [the words] merely arouse anger or resentment." *Skelton v. City of Birmingham,* 342 So. 2d 933, 937 (Ala. Crim. App. 1976). Rather, the words must "by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace."

*Id*. at 936-37. Obviously, only a narrow class of words falls within this category.

When Hershfield said to his neighbor, "Go fuck yourself," he conveyed a message of disrespect to her. However, the statute may not be interpreted to prohibit a person's expressions merely because the words offend or anger an addressee. *See Lewis*, 415 U.S. at 133-34; *Gooding*, 405 U.S. at 523. Nor may the state use the statute as a device "to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us." *Cohen*, 403 U.S. at 25. Indeed, almost twenty years ago Justice Powell observed that "[l]anguage likely to offend the sensibility of some listeners is now fairly commonplace in many social gatherings as well as in public performances." *Eaton v. City of Tulsa*, 415 U.S. 697, 700 (1974) (Powell, J., concurring).

The words used by Hershfield were vulgar, insulting, and offensive, but they are not punishable under the statute unless they are "fighting words." Hershfield's words offensively suggested to his neighbor a sexual activity; however, they did not suggest a challenge or an intimation of threatening contact. In *Rozier v. State*, 140 Ga. App. 356, 231 S.E.2d 131 (1976), the court held as a matter of law that a vulgar sexual proposition made to a female in her presence "did not constitute 'fighting words.'" *Id*. Other courts have held that use of the words "fuck you," even when addressed to another, are not punishable as fighting words "in the absence of compelling reasons." *Diehl v. State*, 294 Md. 466, 477, 451 A.2d 115, 122 (1982), *cert. denied*, 460 U.S. 1098 (1983). *See also Ware v. City & County of Denver*, 182 Colo. 177, 511 P.2d 475 (1973); *Downs v. State*, 278 Md. 610, 618, 366 A.2d 41, 46 (1976), *cert. denied*, 431 U.S. 974 (1977); *City of Bismarck v. Schoppert*, 469 N.W.2d 808 (N.D. 1991).

The trier of fact could not reasonably find on this record that the words were inherently likely to cause violence. *See Gooding*, 405 U.S. at 528; *In re Welfare of S.L.J.*, 263 N.W.2d 412, 418-20 (Minn. 1978). While the words clearly are vulgar, they are not inherently likely to cause violence. No evidence established that Hershfield's comment has the inherent quality of causing visceral, reflexive violence. In construing the statute narrowly to meet constitutional standards, a Court may not read the statute to vest in the trier of fact the unfettered discretion to enforce an amorphous "suitable" level of discourse. *Gooding*, 405 U.S. at

528. "[S]o long as the means are peaceful, the communication need not meet standards of acceptability." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). Moreover, reliance upon "common understanding and practice" as a measure of the likelihood of causing violence does not serve to limit the statute to "fighting words." *Gooding*, 405 U.S. at 528.

Only if Hershfield's words were "words of a kind and nature . . . as by their utterance reasonably tend to provoke a breach of the peace," *Mercer*, 214 Va. at 284, 199 S.E.2d at 726, does it become necessary to analyze the "circumstances" under which they were spoken. *Id. See also Lewis*, 415 U.S. at 134; *In re Welfare of S.L.J.*, 263 N.W.2d at 419; *Downs*, 278 Md. at 617, 366 A.2d at 44; *City of St. Louis v. Tinker*, 542 S.W.2d 512, 519 (Mo. 1976). If one assumes, as the majority implicitly does, that the words fall within the proscribed category, I find no evidence that the circumstances reasonably tended to cause a breach of the peace. There is no evidence that Walker's reaction was uncharacteristic of a reasonable person in a like situation. Although Walker heard the comment, the parties were separated by some twenty yards and a fence when Hershfield spoke. There is no evidence that Hershfield's tone was one of violence or severe agitation. Neither party had approached or spoken to the other prior to Hershfield's utterance of this phrase. The record does not show that Walker manifested a disposition to retaliate violently upon hearing Hershfield's comment. Rather, Walker chose to approach Hershfield and ask him why he spoke the words. Hershfield made no further response. Asking a question in response to vulgar speech is not the "breach of the peace" anticipated under Code § 18.2-416.

"A word is not a crystal, transparent and unchanging, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425 (1918). Unseemly words which have become "fairly commonplace in many social gatherings as well as in public performance," *Eaton v. City of Tulsa*, 415 U.S. at 700 (Powell, J., concurring), may cause discomfort and anger but do not rise to the level of fighting words. "Words are often chosen as much for their emotive as their cognitive force." *Cohen*, 403 U.S. at 26.

[C]urses, oaths, expletives, execrations, imprecations, male-dictions, and the whole vocabulary of insults are not intended or susceptible of literal interpretation. They are expressions of annoyance and hostility — nothing more. To attach greater significance to them is stupid, ignorant, or naive. Their significance is emotional, and it is not merely immea-surable but also variable. The emotional quality of exclama-tions varies from time to time, from region to region, and as between social, cultural, and ethnic groups.

*City of St. Paul v. Morris,* 258 Minn. 467, 480-81, 104 N.W.2d 902, 910 (1960) (Loevinger, J., dissenting), *cert. denied,* 365 U.S. 815 (1961). "One [person's] vulgarity is another's lyric." *Cohen,* 403 U.S. at 25.

In order to sustain a conviction under Code § 18.2-416, it is not sufficient that the words cause anger and resentment. To be fight-ing words, they must be inherently likely to cause an immediate violent response. Although I concur with the majority that the conviction is invalid, I do so because the words spoken by Hershfield were not fighting words. I agree, however, that the cir-cumstances, viewed in toto, also do not constitutionally support a conviction under Code § 18.2-416.