665 So.2d 987 (1995)
T.W.
v.
STATE.
CR-92-0810.
Court of Criminal Appeals of Alabama.
March 3, 1995.
Rehearing Denied May 5, 1995.
Henry L. Penick, Birmingham, for appellant.
James H. Evans, Atty. Gen., and Tracy Daniel, Asst. Atty. Gen., for appellee.
COBB, Judge.
This case was originally assigned to another judge on the Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
The appellant, T. W., a juvenile, was adjudicated a delinquent based upon a harassment charge, a violation of § 13A-11-8, Code of Alabama 1975. Four other charges had also been filed against the appellant, but he was found not guilty as to those charges. After finding that the appellant had committed the harassing acts, the juvenile court adjudicated the appellant to be delinquent, ordered him to be placed on indefinite probation, ordered him to pay $50 in fines, and ordered him to stay away from the victim's family.
The facts adduced at the trial tended to establish the following. In May 1992, Mr. Ronald Witherspoon filed a charge alleging that the appellant had raped his 14-year-old *988 daughter. The rape charge was dismissed that same month. Mr. Witherspoon testified that the charge was dismissed because "the police lost some evidence" and he therefore could not pursue the charge against the appellant.
After the rape charge was dismissed, Mr. and Mrs. Witherspoon brought charges against the appellant alleging five separate incidents of disorderly conduct and harassment. Mr. Witherspoon testified that the first incident occurred on May 28, 1992. Mr. Witherspoon stated that as he was driving home, he saw the appellant, who lives on the same street as the Witherspoons, walking toward his car. Mr. Witherspoon testified that as he approached the appellant, the appellant and an individual who was with him jumped into the road in an apparent attempt to block Mr. Witherspoon's vehicle. The appellant moved out of the path of Mr. Witherspoon's vehicle when Mr. Witherspoon did not slow his vehicle, according to Mr. Witherspoon. Mr. Witherspoon further testified that when he passed the appellant, he looked in his rearview mirror and saw that the appellant was making "beckoning gestures" and that the appellant "grabbed his crotch and began to shake it."
Mr. Witherspoon further testified that on June 4, 1992, he arrived home from work, and as he got out of his car, the appellant was walking in front of Mr. Witherspoon's house. According to Mr. Witherspoon, as the appellant was passing his house, the appellant pointed a finger at Mr. Witherspoon and said, "Boom, boom, you're dead." Mr. Witherspoon stated that on each of these encounters with the appellant he felt threatened by the appellant. He testified that he believed the appellant's animosity toward him was based on either his employment as a juvenile officer at family court or his filing the rape complaint against the appellant.
Mrs. Carol Witherspoon testified that on May 27, 1992, when she and her daughter were driving along the street where they live, the appellant "grabbed his crotch and started shaking it" at them. Mrs. Witherspoon testified that on June 4, 1992, as she was driving home from work, the appellant stepped in front of her vehicle. She stated that when she did not come to a complete stop, the appellant jumped away from the vehicle to the side of her car and started screaming at her. Mrs. Witherspoon testified that she did not know what the appellant was screaming. Mrs. Witherspoon testified that she found the appellant's actions "disturbing."
The appellant testified and denied that he had done the things the Witherspoons described. The juvenile court held that the two occasions on which the appellant "grabbed his crotch" constituted harassment under § 13A-11-8, Code of Alabama 1975.
The sole issue presented for our review is whether the appellant's "grabbing his crotch" constituted an "obscene gesture" prohibited by § 13A-11-8, Code of Alabama 1975.
Section 13A-11-8(b), Code of Alabama 1975, provides that a person commits the crime of harassment if, "with intent to harass... another person, he ... makes an obscene gesture towards another person." The term "obscene gesture" is also used in the disorderly conduct statute (§ 13A-11-7) and has been interpreted narrowly to apply to only those gestures made in conjunction with "fighting words," or words that provoke physical retaliation and an immediate breach of the peace. Robinson v. State, 615 So.2d 112, 113 (Ala.Crim.App.1992); see also Skelton v. City of Birmingham, 342 So.2d 933, 936 (Ala.Crim.App.), remanded, 342 So.2d 937 (Ala.1976). "`[W]ords may or may not be "fighting words," depending upon the circumstances of their utterance.' Lewis v. New Orleans, 415 U.S. 130 at 135, 94 S.Ct. 970 at 973, 39 L.Ed.2d 214 (1974) (Powell, J., concurring)."
"....
"Moreover, "`the test is what men of common intelligence would understand would be words likely to cause an average addressee to fight."' Chaplinsky v. New Hampshire, 315 U.S. [568] at 573, 62 S.Ct. [766] at 770, 86 L.Ed. 1031 [1942]. See also Cohen v. California, 403 U.S. [15] at 20, 91 S.Ct. [1780] at 1785 [29 L.Ed.2d 284 (1971)], (defining `fighting words' as `personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction') *989 (emphasis added in B.E.S.). Clearly, this test `is an objective one.' State v. Authelet [120 R.I. 42], 385 A.2d [642] at 649 [(1978)]." B.E.S. v. State, 629 So.2d 761, 764 (Ala.Crim.App.1993).
The gesture the appellant allegedly made is not purely conduct, rather, the gesture is, at least in part, a form of speech. However, it is not the type of speech entitled to protection by the First Amendment of the United States Constitution. The appellant had been charged with the rape of the Witherspoons' daughter and the case had been dismissed only because the police allegedly lost some evidence. The appellant's gesture could reasonably be interpreted by the Witherspoons as threat to molest their daughter again. Indeed, Mr. Witherspoon testified that he felt threatened and Mrs. Witherspoon stated that she was "disturbed" by the gesture.
"`What is a threat must be distinguished from what is constitutionally protected speech.'" Works v. State, 57 Ala.App. 373, 375, 328 So.2d 624, 625, cert. denied, 295 Ala. 429, 328 So.2d 626 (1976) (quoting Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)). "Whether the threat be against the life of a president, or to burn the house of an ordinary citizen, the protection of the First Amendment does not extend to such conduct." In this case, the threat was to sexually molest the Witherspoons' daughter. The trial court's decision finding that the appellant's conduct constituted harassment was correct. Therefore, the adjudication of delinquency is affirmed.
AFFIRMED.
All the Judges concur except TAYLOR, P.J., who dissents with opinion.
TAYLOR, Presiding Judge, dissenting.
I dissent from the majority's holding that the appellant's grabbing his crotch was a criminal act, specifically harassment, as that offense is defined in the harassment statute, § 13A-11-8, Code of Alabama 1975. This section provides:
"(a)(1) Harassment.A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:
"....
"b. Directs abusive or obscene language or makes an obscene gesture towards another person."
While the action of the appellant was rude, ungentlemanly, loathsome, inappropriate, and offensive, I do not believe that the conduct amounted to an "obscene gesture" as that term is used in § 13A-11-8. This court has equated "obscene gesture" with "fighting words." In Robinson v. State, 615 So.2d 112 (Ala.Cr.App.1992), we stated:
"`A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he: ... b. Directs abusive or obscene language or makes an obscene gesture towards another person.' Ala.Code 1975, § 13A-11-8(a)(1) (emphasis added [in Robinson]). The words emphasized above are identical to those used in Section 13A-11-7(a)(3), Ala.Code 1975. See Shinault v. City of Huntsville, 579 So.2d 696 (Ala.Crim.App.1991) (Bowen, J., dissenting). This statute provides: `A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: ... 3) In a public place uses abusive or obscene language or makes an obscene gesture.' Ala. Code 1975 § 13A-11-7(a)(3) (emphasis added [in Robinson]). With reference to the disorderly conduct statute, the words `abusive or obscene language' and `obscene gesture' have been `interpreted narrowly to apply only to "fighting words."' Swann v. City of Huntsville, 455 So.2d 944, 950 (Ala.Crim.App.1984). See also Mosley v. City of Auburn, 428 So.2d 165 (Ala.Crim. App.1982), superseded on other grounds, Mason v. City of Vestavia Hills, 518 So.2d 221 (Ala.Crim.App.1987). `Fighting words' are `those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace.' Skelton v. City of Birmingham, 342 So.2d 933, 936-37 (Ala.Crim.App.), remanded, 342 So.2d 937 (Ala.1976). See also Swann. The words used by the alleged offender must *990 `"be calculated to cause an immediate breach of the peace. It is not enough ... they merely arouse anger or resentment."' Swann, 455 So.2d at 950 (quoting Skelton, 342 So.2d at 937) (emphasis in original). Here, the language used by the appellant did not amount to `fighting words.' There is no evidence that the statement made by the appellant was for the purpose of provoking physical retaliation or causing an immediate breach of the peace."
615 So.2d at 113-14.
There was no evidence that the gesture had the same effect as fighting words in that there was no evidence that the gesture had the "likelihood of causing a violent response by the person to whom they [were] addressed." Robinson, 615 So.2d at 114. Therefore, the appellant's conviction for harassment should be reversed and a judgment rendered in his favor.
The majority opinion may set a dangerous precedent, opening new areas of conflict between notions of rudeness and vulgarity and the constitutional right of free speech. This opinion might well criminalize any movement by a person that included touching the genital area. Societal pressures, such as the overwhelming negative reaction to comedienne Roseanne Barr's grabbing her crotch while singing the national anthem, should be sufficient to deter others from this type of offensive act in the future.