## Richmond

JIMMY M. MERCER v. ANDREW J. WINSTON, SERGEANT OF THE
CITY OF RICHMOND.

October 8, 1973.

Record No. 8194.

Present, All the Justices.

*S. W. Tucker* (*Henry L. Marsh, III; Hill, Tucker & Marsh,* on
brief), for plaintiff in error.

*Barry S. Comess, Assistant Commonwealth's Attorney for the City
of Richmond* (*Jose R. Davila, Jr., Commonwealth's Attorney for the
City of Richmond,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Jimmy M. Mercer was convicted by a jury of violating the provisions of Code § 18.1-255 (breach of the peace) and his punishment was fixed at a fine of $50 and costs.[1] We denied Mercer an appeal from the judgment of the court imposing the sentence. Thereafter he was committed to the respondent, Andrew J. Winston, Sergeant of the City of Richmond, for nonpayment of the fine. Mercer then filed a petition for a writ of habeas corpus, and is here on a writ of error to the action of the lower court dismissing the petition.

Code § 18.1-255 provides:

"If any person shall, in the presence or hearing of another, curse or abuse such other person, or use any violent abusive language to such person concerning himself or any of his relations, or otherwise use such language, under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a misdemeanor, and on conviction fined in any sum not less than two dollars and fifty cents nor more than five hundred dollars, in the discretion of the jury or the judge trying the case without a jury."

The petitioner argues that the statute is on its face unconstitutionally vague and overbroad under the First and Fourteenth Amendments to the Constitution of the United States. Our decision on this issue is controlled by *Chaplinsky* v. *State of New Hampshire*, 315 U. S. 568 (1942) and *Gooding* v. *Wilson*, 405 U. S. 518 (1972).

In *Chaplinsky* the defendant was convicted of violating New Hampshire's breach of the peace statute.[2] Chaplinsky, a member of the sect known as Jehovah's Witnesses, was charged with making the following statement to the complaining witness: "You are a God damned racketeer" and "a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists." Chaplinsky challenged

---

[1] On July 1, 1971, at a public playground in Richmond, there was a disturbance which had racial overtones and approached near riot proportions. Witnesses testified that in the presence and hearing of others Mercer cursed a Richmond police officer and allegedly used violent abusive language to him. A sampling of the language addressed to the officer by Mercer includes the epithets "you white son of a bitch", "you honky pig", "you white mother fucker", "white bastard" and "pig". One officer testified: "And he was cursing, and he was waving his hands. I thought he was throwing something but —".

[2] "No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation." Chapter 378, Section 2, of the Public Laws of New Hampshire.

the constitutionality of the statute as inhibiting freedom of expression because it was vague and indefinite. The Supreme Court of New Hampshire affirmed and limited the statutory language "offensive, derisive or annoying word" to "fighting" words:

"[N]o words were forbidden except such as have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed. . . .

\* \* \* \* \*

"The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. . . . Derisive and annoying words can be taken as coming within the purview of the statute . . . only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace. . . .

"The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee . . . ." *State* v. *Chaplinsky*, 91 N. H. 310, 313, 320-321, 18 A. 2d 754, 758, 762 (1941).

On appeal to the Supreme Court, and in view of that authoritative construction, Mr. Justice Murphy said:

"We are unable to say that the limited scope of the statute as thus construed contravenes the constitutional right of free expression. It is a statute narrowly drawn and limited to define and punish specific conduct lying within the domain of state power, the use in a public place of words likely to cause a breach of the peace. [Citing cases.] This conclusion necessarily disposes of appellant's contention that the statute is so vague and indefinite as to render a conviction thereunder a violation of due process. A statute punishing verbal acts, carefully drawn so as not unduly to impair liberty of expression, is not too vague for a criminal law. [Citing case.]

"Nor can we say that the application of the statute to the facts disclosed by the record substantially or unreasonably impinges upon the privilege of free speech. Argument is unnecessary to demonstrate that the appellations 'damn racketeer' and 'damn Fascist' are epithets likely to provoke the average person to retaliation, and thereby cause a breach of the peace." 315 U. S. 573-74.

Thirty years after its decision in *Chaplinsky* the Supreme Court considered Georgia's breach of the peace statute[3] in *Gooding* v. *Wilson, supra,* and by a divided court held it to be unconstitutionally vague and overbroad under the First and Fourteenth Amendments. At the same time it distinguished *Chaplinsky* and observed: "Our decisions since *Chaplinsky* have continued to recognize state power constitutionally to punish 'fighting' words under carefully drawn statutes not also susceptible of application to protected expression . . . ." 405 U. S. at 523.

The court took exception to the words "opprobrious" and "abusive" found in the Georgia statute, and said that the dictionary definitions of these words gives them greater reach than "fighting" words. It noted that Webster's Third New International Dictionary (1961) defined "opprobrious" as "conveying or intended to convey disgrace", and "abusive" as including "harsh, insulting language". The court examined a number of Georgia appellate decisions and found that the statute had not been limited in application, as in *Chaplinsky*, to words that "have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed".

The Virginia statute, Code § 18.1-255, addresses itself to a direct confrontation of individuals in which one curses or abuses the other or uses violent abusive language concerning the other or his or her relations under circumstances which would precipitate an immediate, forceful and violent reaction by a reasonable person. It envisions words of a kind and nature spoken under such circumstances as by their utterance reasonably tend to provoke a breach of the peace.

Code § 18.1-255 serves a valid and proper purpose for it is aimed at preventing personal, face-to-face, abusive and insulting language likely to provoke a violent reaction and retaliation, and we so construe the statute. We limit its application to words that have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed. In light of such construction the statute is not constitutionally vague and overbroad under the First and Fourteenth Amendments to the United States Constitution.

Our holding is not inconsistent with *Taylor* v. *Commonwealth*, 186 Va. 626, 43 S. E. 2d 857 (1947), *Byrd* v. *Commonwealth*, 158 Va. 897, 164 S. E. 400 (1932) or *Byrd* v. *Commonwealth*, 124 Va. 833, 98 S. E. 632 (1919), which also involve Virginia's breach of the peace statute.

---

[3] "Any person who shall, without provocation, use to or of another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the peace . . . shall be guilty of a misdemeanor." Code Ga. § 26-6303.

In *Byrd* (1932), the defendant became enraged upon returning home and not finding his wife and children. After locating the children but not the wife, he cursed and said "I'll kill her just as soon as I see her". In a senseless fury he broke up his own furniture, armed himself with a repeating shotgun and went to a neighbor's home where he proceeded to order the occupants of an automobile out and shot at the car. The rampage continued until he ultimately shot at a person, and then fled the state. Obviously the court, in finding a breach of the peace under such circumstances, was not concerned with mere opprobrious words or abusive language. In *Taylor* the defendants not only cursed and used violent abusive language to another regarding his female relative, but also made an assault on the complaining witness while under the influence of liquor. In *Byrd* (1919) the issues were whether under the statute the insulting words had to be used in the presence of a third person to constitute an offense, and if evidence of the truth of the words used was admissible in mitigation of punishment.

In none of these three cases was the court concerned with a breach of the peace caused by the use of violent abusive language only.

Mercer would also have us reverse his conviction on the ground that the trial court erred in granting an instruction which told the jury "that the term 'breach of the peace' means a violation or disturbance of the public tranquillity and order by any riotous, forceful or unlawful conduct". Petitioner takes exception in his brief to the language "unlawful" conduct upon the ground that it could be read "not merely as proscribing 'fighting' words, but also as proscribing abusive language to and concerning another which is reasonably calculated to provoke the addressee to behave in a disorderly manner . . . or to profanely curse or swear . . . or to engage in some other unlawful conduct not contemplated in *Chaplinsky* v. *New Hampshire*".

We do not so construe the instruction. The unlawful conduct referred to therein is conduct which provokes a breach of the peace and creates a disturbance of the public tranquillity and order.

If the unlawful conduct relied upon consists of the use by a defendant of violent abusive language to another, as in the instant case, it is for the jury to determine whether the words used are "fighting" words and whether the use of such words under the circumstances are reasonably calculated to provoke a violent reaction and retaliation. If so, their utterance constitutes an offense under Code § 18.1-255 as we construe the statute.

■ It is obvious that the trial court construed the instruction as we do. In denying the petitioner's writ, it observed that the issue before the court was whether Code § 18.1-255, which was substantially set forth in one of the court's instructions, "prohibit language merely offensive or is limited in scope to fighting words". In holding the statute constitutional, and constitutionally applied to Mercer, the trial court further observed:

> "The Court further realizes that while this right [freedom of speech] is not absolute at all times and under all circumstances, the exceptions are narrowly limited. Where resort, however, is made to fighting words or, more fully stated, to insulting, obscene and profane utterances which, when directed to another, reasonably tend to incite an immediate breach of the peace, the use of that language may be prohibited and punished as a criminal act."

Counsel for petitioner found no fault with the definition of breach of the peace contained in the instruction when it was being considered by the trial court. The record shows that the court read the instruction to counsel for Mercer and the Commonwealth's Attorney and said: "It is my understanding that neither counsel has any objection to the definition of the breach of the peace as used in this instruction, but counsel for the defense is of the opinion that no definition of the breach of the peace should be given for reasons that defense counsel will now assign." Petitioner's counsel then stated that his objection to this instruction, as well as to another that was granted, was: "[I]t is not applicable in this situation inasmuch as the law cannot presume that police officers, who are sworn to uphold the law, will breach the peace because of mere words." In his assignments of error the objection voiced to the instruction was that in granting it the court thereby ruled "that the law presumes or permits a presumption or finding that its peace officers may reasonably be expected to breach the peace in resentment of another's use of mere words".

In his assignments of error to the action of the court in denying his petition for a writ of habeas corpus Mercer says the court erred in holding that Code § 18.1-255 does not violate the First and Fourteenth Amendments to the Constitution of the United States by (1) "an extension of its reach beyond a limited proscription of 'fighting words' ", and (2) "by leaving wide open the area of responsibility and making one a criminal who miscalculates the boiling point of the per-

son addressed". No exception was then taken to the language of the instruction.

While we do not approve the form of the instruction, or the language in which it is couched, it is our conclusion that Mercer had a full and fair trial and that the action of the court below in denying his petition for a writ of habeas corpus should be affirmed for the reasons stated in this opinion.

*Affirmed.*