COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Elder
Argued at Salem, Virginia


BRENT DAVID MARTTILA
                                              OPINION BY
v.    Record No. 2585-99-3            JUDGE LARRY G. ELDER
                                           OCTOBER 24, 2000
CITY OF LYNCHBURG


              FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                         Richard S. Miller, Judge

              Randall J. Trost (Randall J. Trost, P.C., on
              brief), for appellant.

              No brief or argument for appellee.


        Brent David Marttila (appellant) appeals from his bench

trial conviction for using violent, abusive language under

circumstances reasonably calculated to provoke a breach of the

peace in violation of Lynchburg Ordinance 27-13.[1]  On appeal,

appellant contends the court erroneously (1) convicted him of

violating Code § 18.2-416 even though he was charged with

violating a Lynchburg ordinance and the Commonwealth did not

move to amend the charge; and (2) concluded the evidence was

sufficient to prove his behavior occurred in a face-to-face

encounter and was likely to provoke an immediate breach of the

peace.  Because the record reflects that appellant was both

_____

        [1] Appellant also was charged with failing to register a
vehicle and having no driver's license.  He pleaded guilty to
those charges and does not contest them on appeal.

charged with and convicted for violating Lynchburg Ordinance 27-13 rather than Code § 18.2-416, we reject appellant's first assignment of error. However, we agree that the evidence, as found by the trial court, was insufficient to establish that appellant's statements were uttered under circumstances having a direct tendency to provoke an immediate breach of the peace. Therefore, we reverse and dismiss appellant's conviction.

I.

BACKGROUND

At about 2:00 a.m. on June 24, 1999, Officer Hanson and Lieutenant Swisher approached appellant to question him about a vehicle registration problem. During an earlier encounter at about 1:00 a.m., appellant had denied that the vehicle in question belonged to him, and Officer Hanson had accepted appellant's representations. However, when Lieutenant Swisher saw appellant "standing at the [same] car" at about 2:00 a.m., Hanson and Swisher returned to question appellant further. During the first encounter, appellant had the odor of alcohol on his breath and was belligerent, and Hanson "was intimidated by him." As a result, when the second encounter began, Hanson called for backup, and Officer Edwards arrived on the scene sometime thereafter.

While Hanson and Swisher were attempting to talk to appellant during the second encounter, appellant walked across the street from the car and sat on the front porch steps of a

residence.  Three or four other people were also seated on that porch but did not make any threats or become involved in the encounter in any significant way.  When the officers asked appellant to come down from the porch, he was uncooperative, telling them to come up instead, and he "wouldn't answer any of [the officers'] questions."

The officers--who had learned the vehicle did, in fact, belong to appellant and that he had lived in Virginia for six months without obtaining a Virginia driver's license or vehicle registration--decided to effect an "investigative detention" in the hope of gaining greater cooperation from appellant, and they began to place him in handcuffs.  When the officers decided to place appellant in handcuffs and told him he was under arrest, they were about twenty feet away from appellant's location on the porch.  As they approached the porch, appellant began to make comments, and "the comments continued [as Swisher] actually placed him in handcuffs" and Hanson "usher[ed] him off the front steps."  In a sarcastic, "slightly belligerent manner," "a little louder than normal conversation, but [not] screaming," appellant "called [the officers] fucking pigs, [and said they] were fucking jokes . . . [and] should be at a fucking donut shop."[2]  Although Officer Hanson believed appellant was "yelling

_____

[2] Each of the three officers gave a slightly different account of precisely what appellant said, how close the officers were to him when he made those statements, and whether he had been handcuffed yet.  Because the trial court found that

the comments in a threatening fashion," appellant was seated when he began to make these comments and did not shake his fists, show a weapon or make any verbal threats.  Appellant stiffened up and did not attempt "to comply with [the officers'] commands" as they physically took him into custody and handcuffed him, but they did not have to use their mace or other weaponry, and appellant made no "motion to attack" any of the officers.

Lieutenant Swisher testified that he was not afraid of appellant and "didn't see anything that would lead [him] to believe that Officer Hanson was fearful of [appellant]." Officer Edwards testified that he "was cautious as far as officer safety" but "wasn't afraid of [appellant]" and "basically tuned [appellant] out" because he "didn't care to hear what [appellant] had to say."  Officer Hanson testified he was "intimidated by [appellant]" during the first encounter and that appellant "yell[ed] the comments [in the second encounter] in a threatening fashion," but he gave no testimony that he was intimidated, felt threatened, or thought he was going to have to fight appellant during the second encounter.

Appellant was charged with violating Lynchburg Ordinance 27-13.  However, at his bench trial, the court asked appellant's

---

appellant "use[d] the language as described by Officer Swisher" "at the time he was being handcuffed" and that he did so "in a slightly belligerent manner," we rely on these facts on appeal.

counsel "which Code section . . . [appellant's breach of the peace charge was] under."  Counsel responded that it was "[Code §] 18.2-416, breach of [the] peace."  Counsel did not indicate that appellant was charged under the corresponding local ordinance and did not object to being tried under the statute rather than the ordinance.  All subsequent references at trial were to Code § 18.2-416 rather than the corresponding Lynchburg ordinance.

Appellant moved to strike at the close of the Commonwealth's evidence and again at the close of all the evidence.  In denying the first motion, the court held that the language in Ford v. City of Newport News, 23 Va. App. 137, 474 S.E.2d 848 (1996), concerning First Amendment protections for verbal criticism of police officers was "dicta in [appellant's] case" because Ford involved the disorderly conduct statute, Code § 18.2-415, whereas appellant's case involved the abusive language statute, Code § 18.2-416.  It also held that, even if the statements regarding the amount of verbal abuse police officers are required to absorb under the First Amendment were applicable, the evidence, viewed in the light most favorable to the Commonwealth, "has . . . risen above that level."  In denying the second motion and convicting appellant of the charged offense, the trial court found as follows:

> I find that at the time [appellant] was
> being cuffed he did use the language as

described by Officer Swisher and that was in a slightly belligerent manner.

You have to remember that police officers are human beings too. And while they do have to absorb a certain amount of abuse, they are protected by this statute also for the reason that they might sort of snap under the circumstances and do something that would cause harm to the defendant and be charged with something themselves.

So these were fighting words under the circumstances. That's the whole idea under this statute. And I find [appellant] guilty of violating Virginia Code § 18.2-416 in that he used the language that he did under the circumstances because [it was] reasonably calculated to cause a breach of the peace.

Although all references at trial were to Code § 18.2-416, the conviction order indicates that the court found appellant guilty of violating "27-13," the Lynchburg ordinance under which he was charged.

## II.

### ANALYSIS

#### A.

JURISDICTION TO CONVICT UNDER VIRGINIA CODE
RATHER THAN LOCAL ORDINANCE

Appellant contends first that the court lacked jurisdiction to convict him of violating Code § 18.2-416 because he was originally charged under Lynchburg Ordinance 27-13 and the court did not amend the charge to reflect the similar Virginia statute. He admits he failed to object to this discrepancy in

the trial court but contends the good cause and ends of justice

exceptions to Rule 5A:18 compel us to consider this error.

Assuming without deciding that appellant's assignment of

error is properly before us,[3] we nevertheless conclude that no

reversible error occurred.  Settled principles provide that "[a]

court speaks through its orders and those orders are presumed to

accurately reflect what transpired."  McBride v. Commonwealth,

24 Va. App. 30, 35, 480 S.E.2d 126, 128 (1997).  This

presumption also applies where an order conflicts with a

transcript of related proceedings.  See Stamper v. Commonwealth,

220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979).  Here, although

the trial transcript indicates the court convicted appellant

under Code § 18.2-416, the conviction order provides that the

conviction was rendered pursuant to "27-13," which is the

_____

[3] It is arguable from the record that appellant invited or
consented to being convicted under the statute rather than the
local ordinance.  When the trial court asked appellant's counsel
at trial what code section applied, counsel responded that it
was "[Code §] 18.2-416, breach of [the] peace."  Counsel did not
indicate that appellant was charged under the corresponding
local ordinance and did not object to appellant's being tried
under the statute rather than the ordinance.  Counsel's closing
argument also referenced the statute rather than the ordinance.
Cf. Fontaine v. Commonwealth, 25 Va. App. 156, 163-65, 487
S.E.2d 241, 244-45 (1997) (holding that mere failure to object
to conviction for offense not lesser included in charged offense
does not constitute waiver of right not to be convicted for
offense not charged); Manns v. Commonwealth, 13 Va. App. 677,
679-80, 414 S.E.2d 613, 615 (1992) (holding that specific
request to trial court to convict of misdemeanor not lesser
included in charged felony barred accused from objecting on
appeal to being convicted of offense not charged or lesser
included).

Lynchburg ordinance under which appellant was originally charged.  Because no inconsistency exists between the original charge and the order of conviction, no reversible error exists.

B.

SUFFICIENCY OF THE EVIDENCE

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the appellee, granting to it all reasonable inferences fairly deducible therefrom.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  The judgment of the trial court will be disturbed only if plainly wrong or without evidence to support it.  See id.

Lynchburg Ordinance 27-13, which is almost identical to the language of Code § 18.2-416,[4] provides as follows:

> If any person shall in the presence or
> hearing of another curse or abuse such other
> person, or use any violent abusive language
> to such person concerning himself or any of
> his relatives, or otherwise use such
> language under circumstances briefly
> calculated to provide a breach of the peace,
> he shall be guilty of a class 3 misdemeanor.

---

[4] Code § 18.2-416 provides as follows:

> If any person shall, in the presence or
> hearing of another, curse or abuse such
> other person, or use any violent abusive
> language to such person concerning himself
> or any of his relations, or otherwise use
> such language, under circumstances
> reasonably calculated to provoke a breach of
> the peace, he shall be guilty of a Class 3
> misdemeanor.

The Virginia Supreme Court has observed that the corresponding state statute "is aimed at preventing personal, face-to-face, abusive and insulting language" likely to "precipitate an immediate, forceful and violent reaction by a reasonable person."  Mercer v. Winston, 214 Va. 281, 284, 199 S.E.2d 724, 726 (1973).  The statute is constitutional if its application is limited to words that "have a direct tendency to cause acts of violence by the person at whom, individually, the remark is addressed."  Id. (citing State v. Chaplinsky, 18 A.2d 754, 758 (N.H. 1941), aff'd, 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 2d 1031 (1942) (where accused, in custody of traffic officer on city street, encountered city marshall, who was responding to scene of riot precipitated in part by accused, and called him a "God damned racketeer" and "damned Fascist" and said the "whole government of Rochester are Fascists or agents of Fascists," evidence established that "appellations" were "epithets likely to provoke the average person to retaliation, and thereby cause a breach of the peace")).  By analogy, any similar local ordinance is constitutional if interpreted in the same fashion.

As we noted in Ford, 23 Va. App. at 143, 474 S.E.2d at 850-51, which involved a related statute also requiring proof that the proscribed behavior has a "direct tendency to cause acts of violence," the United States Supreme Court has emphasized that

> "the First Amendment protects a significant
> amount of verbal criticism and challenge
> directed at police officers.  'Speech is
> often provocative and challenging. . . .
> [But it] is nevertheless protected against
> censorship or punishment, unless shown
> likely to produce a clear and present danger
> of a serious substantive evil that rises far
> above public inconvenience, annoyance or
> unrest.'"

Id. at 143, 474 S.E.2d at 851 (quoting City of Houston v. Hill, 482 U.S. 451, 461, 107 S. Ct. 2502, 2509, 96 L. Ed. 2d 398 (1987) (quoting Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S. Ct. 894, 896, 93 L. Ed. 1131 (1949))) (interpreting statute proscribing interference with a police officer in the execution of his duties).  "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  Hill, 482 U.S. at 462-63, 107 S. Ct. at 2510; see id. at 463 n.12, 107 S. Ct. at 2510-11 n.12 (citing with approval 1929 case reversing conviction of individual who said to police officer, "You big muttonhead, do you think you are a czar around here?" (quoting Ruthenbeck v. First Crim. Judicial Court of Bergen City, 147 A. 625, 625 (N.J. 1929))).  The United States Courts of Appeals for the Second, Eighth and Ninth Circuits have applied Hill to hold that "the 'fighting words' doctrine may be limited in the case of communications addressed to properly trained police officers because police officers are expected to exercise greater

restraint in their response than the average citizen."[5]  Buffkins

v. City of Omaha, 922 F.2d 465, 472 (8th Cir. 1990) (holding as

---

[5] To the extent Burgess v. City of Virginia Beach, 9 Va. App. 163, 167, 385 S.E.2d 59, 61 (1989), holds law enforcement officers are not required to exercise a higher degree of restraint than ordinary citizens, we view it as conflicting with the United States Supreme Court's holding in Hill, 482 U.S. at 461-63 & n.12, 107 S. Ct. at 2510-11 & n.12.

Burgess was briefed in this Court in 1987, the same year in which Hill was decided.  Although the decision in Hill was released prior to the briefing in Burgess, neither Burgess nor the City of Virginia Beach cited Hill to the Court, and the Burgess opinion makes no reference to Hill.

In deciding Burgess, we noted Justice Powell's concurrence in Lewis v. New Orleans, 415 U.S. 130, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1975), and held, in essence, that we were not bound by it.  See 9 Va. App. at 167-68, 385 S.E.2d at 61.  We made no reference to Hill, in which the United States Supreme Court quoted Justice Powell's concurrence in Lewis and concluded, as discussed more fully in the text of this opinion, that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  Hill, 482 U.S. at 462-63, 107 S. Ct. at 2510.

In our subsequent decision in Ford, 23 Va. App. at 144, 474 S.E.2d at 851, we quoted extensively from Hill, recognizing, at least implicitly, its holding that police officers are, in fact, required to exercise a higher degree of restraint when confronted by language or conduct which is offensive but does not have a direct tendency to cause acts of violence by the person to whom, individually, the language or conduct is directed.  Applying that standard to Ford's conviction for disorderly conduct, we held as follows:  "There is simply no evidence in the record to support the reasonable belief that the defendant's conduct would cause a reasonable officer to respond with physical force or violence or that the officers considered the defendant's throwing his arms in the air to be an assault."  Id. (emphasis added).

Thus, our decision in Ford recognized and applied Hill's holding that the First Amendment requires properly trained police officers to exercise a higher degree of restraint when confronted by disorderly conduct and abusive language.  Because our holding in Ford interpreted and applied the United States Supreme Court's precedent from Hill whereas our holding in Burgess did not consider Hill, we find controlling the reasoning of Hill, as interpreted and applied in Ford, and conclude that Burgess, to the extent it conflicts with Hill and Ford, is not controlling.

a matter of law that telling a police officer he was an "asshole" while departing airport interview room did not constitute fighting words in absence of evidence that speaker became violent or threatened violence); see Posr v. Court Officer Shield #207, 180 F.3d 409, 415-16 (2d Cir. 1999); Duran v. City of Douglas, 904 F.2d 1372, 1377 (9th Cir. 1990).  These requirements apply to both Code §§ 18.2-415 and 18.2-416 because both have been interpreted to comply with the First Amendment only if they punish specified acts or utterances that have a "direct tendency to cause acts of violence by the person at whom, individually, the [remark or conduct is addressed or directed]."  Mercer, 214 Va. at 284, 199 S.E.2d at 726 (interpreting predecessor to Code § 18.2-416); Squire v. Pace, 380 F. Supp. 269, 278-79 (W.D. Va. 1974) (declaring predecessor to Code § 18.2-415 unconstitutional because not limited to acts having direct tendency to cause acts of violence), aff'd, 516 F.2d 250 (4th Cir. 1975); 1976 Va. Acts ch. 244 (amending new disorderly conduct statute, Code § 18.2-415, enacted pursuant to 1975 Va. Acts chs. 14, 15, to proscribe only conduct having direct tendency to cause acts of violence).

Under this standard, we conclude, as a matter of law, that appellant's words did not have the necessary "direct tendency" to cause "an immediate, forceful and violent reaction by a reasonable person" in the position of the police officers at whom the words were directed.  Although appellant stiffened up

when the officers began to handcuff him, he made no threatening gestures and merely expressed contempt for the officers in a general sense when he called them "fucking pigs" and "fucking jokes" and said they "should be at a fucking donut shop." See Chaplinsky, 18 A.2d at 762 (noting that the words, "damned Fascist," were "fighting words" when addressed to the average American in 1941 but might not so qualify at a different time); R.I.T. v. State, 675 So. 2d 97, 99 (Ala. Crim. App. 1995) (noting that "[w]ords must be evaluated in the era in which they are uttered--words that constitute fighting words change from generation to generation, or even more quickly" and holding that teenager's statement to officer, "fuck you," made in presence only of officer and teenager's parents and brother as teenager walked away from officer did not constitute fighting words under heightened standard applied to police officers); Christine Egan, "Fighting Words" Doctrine:  Are Police Officers Held To A Higher Standard, Or Per Bailey v. State, Do We Expect No More From Our Law Enforcement Officers Than We Do From The Average Arkansan?, 52 Ark. L. Rev. 591, 591-92 (1999) ("Much has changed since [Chaplinsky was decided] in 1942.  Our society is much coarser, both in its language and its conduct.  What constituted 'fighting words' in 1942 is unlikely to even raise an eyebrow today.").  This is precisely the type of "verbal criticism [of] . . . police officers" that is "'protected against censorship or punishment'" by the First Amendment because it is not, under the

circumstances established by the record, "'likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest.'" Hill, 482 U.S. at 461, 107 S. Ct. at 2509 (quoting Terminiello, 337 U.S. at 4, 69 S. Ct. at 896). Compare Mercer, 214 Va. at 284-87 & n.1, 199 S.E.2d at 726-28 & n.1 (denying habeas petition for 1971 conviction under abusive language statute where protester involved in racial disturbance that "approached near riot proportions" waived his hands and uttered multiple racial epithets at police officer, including "you white son of a bitch," "you honky pig," "you white mother fucker," "white bastard" and "pig").

For these reasons, we hold, as a matter of law, that the evidence was insufficient to prove appellant's statements had a direct tendency to provoke an immediate breach of the peace by reasonably trained police officers in the position of the officers to whom the remarks were addressed. Therefore, we reverse and dismiss appellant's conviction on these grounds, and we find it unnecessary to consider appellant's contention that he did not make the statements in a face-to-face encounter.

Reversed and dismissed.