COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Frank and Clements
Argued at Richmond, Virginia


KEVIN GERALD TUCKER

                                     MEMORANDUM OPINION* BY
v.    Record No. 1697-00-1           JUDGE ROBERT P. FRANK
                                           JULY 10, 2001
COMMONWEALTH OF VIRGINIA AND
 CITY OF VIRGINIA BEACH


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Edward W. Hanson, Jr., Judge

            Annette Miller (Office of the Public
            Defender, on brief), for appellant.

            Megan C.Z. Capoldo, Assistant Commonwealth's
            Attorney (Harvey L. Bryant, III,
            Commonwealth's Attorney, on brief), for
            appellee.


    Kevin Gerald Tucker (appellant) was convicted in a bench

trial of assault and battery, in violation of Code § 18.2-57, and

disturbing the peace, in violation of Virginia Beach City Code

§ 23-10.[1]  On appeal, appellant contends the trial court erred in

finding the evidence sufficient to convict him of the disturbing

the peace charge.  Finding no error, we affirm.

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

        [1] Appellant challenges only the disturbing the peace
conviction.

## I.  BACKGROUND

"'On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence proved three police officers responded to a 911 call at appellant's home.  When they arrived, they encountered a panicked woman fleeing the house.  Officer J.T. Randall approached the house and asked appellant to come outside to talk.  Appellant opened the door screaming excitedly, waving a knife in front of him.

Officer Randall told appellant to drop the knife "because he still had the knife straight out and was moving it around quickly."  Appellant continued in his excited state, screaming, making irrational statements and holding the knife out, bringing it up and down.  Officer Randall testified, "I got a distance between myself and [appellant], and I pleaded with him to drop the knife, and [appellant] kept stating to me that he was eating a steak."  Officer Kelley observed appellant being very loud and boisterous and could hear him yelling as soon as he exited his patrol car.  Appellant calmed down somewhat, but "[h]e kept holding [the knife] out, putting it down," and Officer Randall had to knock the knife out of appellant's hand.  Officer Randall stated, "He was not willing to drop the knife voluntarily, so I had to physically take the knife away from him and take it out of

-

his hand."  Officer Randall attempted to place appellant under arrest for disturbing the peace, but appellant continued to yell very loudly, and Officers Fortin and Kelley had to assist in the arrest.

Once they had appellant in custody, Officers Fortin and Kelley began to walk appellant toward the curb while Officer Randall retrieved the police car.  During that walk, appellant fought with the officers and kicked Officer Fortin, striking her on her upper left thigh.  When questioned, appellant stated he had threatened Officer Randall because he was "pissed" that he had spilled coffee on himself and that he had the knife because he had a temper problem.  When asked why he kicked Officer Fortin, appellant stated he has a real bad temper and that he was sorry.

## II.  ANALYSIS

Appellant contends that because police officers routinely respond to situations where the public's peace is being disturbed, he should not be convicted of disturbing the peace of a law enforcement officer.  Appellant argues, "To charge someone with a crime for what amounts to a commonplace element associated with their jobs does not form an adequate basis of a disturbing the peace charge."  Appellant cites no authority to support his contention, nor have we found any.

"It shall be unlawful and a Class 1 misdemeanor for any person to disturb the peace of others by violent, tumultuous, offensive, or obstreperous conduct or by threatening, challenging

-

to fight, assaulting, fighting or striking another."  City of

Virginia Beach Code § 23-10.

"The plain, obvious, and rational meaning of a statute is

always preferred to any curious, narrow or strained construction;

a statute should never be construed so that it leads to absurd

results."  Branch v. Commonwealth, 14 Va. App. 836, 839, 419

S.E.2d 422, 424 (1992) (citations omitted).

"'Where a statute is unambiguous, the plain meaning is to be

accepted without resort to the rules of statutory

interpretation.'"  Frazier v. Commonwealth, Dep't. of Social

Servs., Div. of Child Support Enforcement, ex rel. Sandridge, 27

Va. App. 131, 134, 497 S.E.2d 879, 880 (1998) (citation omitted).

Nothing in the City Code exempts law enforcement officers

from protection from threatening or assaultive behavior.  It is

inconceivable that such should be legislative intent.

Appellant's behavior did not consist merely of offensive,

profane or uncivil speech.

> "[T]he First Amendment protects a
> significant amount of verbal criticism and
> challenge directed at police officers.
> 'Speech is often provocative and
> challenging . . . .  [But it] is nevertheless
> protected against censorship or punishment,
> unless shown likely to produce a clear and
> present danger of a serious substantive evil
> that rises far above public inconvenience,
> annoyance, or unrest.'"

-

Ford v. City of Newport News, 23 Va. App. 137, 143, 474 S.E.2d

848, 851 (1996) (quoting City of Houston v. Hill, 482 U.S. 451,

461 (1987) (citation omitted)).[2]

In Ford, we wrote:

> The words uttered by the defendant,
> however offensive or rude, do not establish
> disorderly conduct.  Although Officer Nowak
> testified that the defendant "[threw] his
> arms about in the air" and was "loud and
> boisterous," he made no threatening remarks,
> uttered no words that would reasonably incite
> a breach of the peace, or made no threatening
> movements toward the officers.  While the
> defendant's remarks lacked civility and were
> impolite, loud, and persistent protestations
> about his treatment, his act of throwing his
> arms in the air could in no reasonable way
> cause or incite the officers to violence.
> There is simply no evidence in the record to
> support a reasonable belief that the
> defendant's conduct would cause a reasonable
> officer to respond with physical force or
> violence or that the officers considered the
> defendant's throwing his arms in the air to
> be an assault.

Id. at 144, 474 S.E.2d at 851.

In Marttila v. City of Lynchburg, 33 Va. App. 592, 535 S.E.2d

693 (2000), we interpreted Ford:

> In our subsequent decision in Ford, 23
> Va. App. at 144, 474 S.E.2d at 851, we quoted
> extensively from Hill, recognizing, at least
> implicitly, its holding that police officers
> are, in fact, required to exercise a higher
> degree of restraint when confronted by
> language or conduct which is offensive but
> does not have a direct tendency to cause acts

---

[2] While Ford involves the sufficiency of a disorderly
conduct conviction, its analysis is instructive as to
appellant's argument that law enforcement officers cannot be the
victims of breach of peace violations.

-

> of violence by the person to whom, individually, the language or conduct is directed. Applying that standard to Ford's conviction for disorderly conduct, we held as follows: "There is simply no evidence in the record to support the reasonable belief that the defendant's conduct would cause a reasonable officer to respond with physical force or violence or that the officers considered the defendant's throwing his arms in the air to be an assault." Id. (emphasis added). Thus, our decision in Ford recognized and applied Hill's holding that the First Amendment requires properly trained police officers to exercise a higher degree of restraint when confronted by disorderly conduct and abusive language.

Id. at 601 n.5, 535 S.E.2d at 698 n.5.

Here, appellant, armed with a knife, waved it up and down and held it straight out, forcing the officer to knock the knife out of his hand.

"A breach of the peace is an act of violence or an act likely to produce violence." Taylor v. Commonwealth, 11 Va. App. 649, 653, 400 S.E.2d 794, 796 (1991) (citations omitted).

At oral argument, the City conceded that appellant did not assault Officer Randall, but that his violent, tumultuous, offensive or obstreperous conduct "prompted this officer's physical response to take the knife from appellant." We agree.

Obstreperous conduct is that which is resistant to "control or restraint . . . with a show of noisy disorder." Webster's Third New International Dictionary 1559 (1993).

The evidence was sufficient to prove that appellant disturbed the peace by his conduct that forced the officer to use physical

-

force.  Finding no error, we affirm appellant's conviction of disturbing the peace.

**Affirmed.**

Benton, J., dissenting.

Kevin Gerald Tucker was convicted of disturbing the peace of others in violation of the City's ordinance, which provides as follows:

> It shall be unlawful and a Class 1 misdemeanor for any person to disturb the peace of others by violent, tumultuous, offensive or obstreperous conduct or by threatening, challenging to fight, assaulting, fighting or striking another.

City of Virginia Beach Ordinance § 23-10. The City argues that the conviction was properly based on Tucker's behavior because he was threatening, violent, offensive and obstreperous.

The evidence proved that a police officer spoke to a woman who ran from Tucker's house in a "state . . . of panic." When the officer "couldn't verify anything of the situation at hand," he went to Tucker's house and "banged on the door with [his] flashlight." As Tucker came to the door, the officer asked him to come outside. The officer testified that the following occurred:

> Mr. Tucker came outside and was very excited, was yelling, screaming. He was very disheveled, had a lot of -- I don't know exactly what it was, but blotches on his shirt and on his pants and in his hands.
>
> Q: Was he yelling anything in particular?
>
> A: What I can recall, he was just very excited. He was screaming. I don't know exactly what he was screaming at. At first nothing was directed at me. He was just screaming. I would assume that it was about the young lady that ran.

-

The officer testified that when he asked Tucker to drop the steak knife Tucker was holding, Tucker "kept stating" that he had been eating a steak.  The officer further testified as follows:

> A:  And he was screaming loudly.  I really couldn't decide what he was screaming at, but he was just excited, kept bringing the knife out.  He kept saying no as if he was trying to convince me of something, just making irrational statements.  I really don't know what he was trying to tell me. He kept holding it out, putting it down.
>
> Q:  And what did you do in reaction to this?
>
> A:  At this time I got Mr. Tucker calmed down somewhat.  He was still trying to make statements to me.  I didn't know what he was trying to tell me, and at that point he put the knife out.  I knocked it out of his hand.  Then I tried to place him under arrest.

Tucker's behavior falls into two broad categories.  First, he possessed a knife openly in the officer's presence.  The City concedes, however, that Tucker's possession of the knife under the circumstances of this case did not amount to an assault on the officer.[3]  Furthermore, it does not fulfill the other elements of the ordinance.  The officer testified that Tucker explained his conduct at the time by stating that he had been eating a steak.  By the City's own evidence, Tucker was confused

---

[3] Tucker was convicted of disturbing the peace and simple assault and battery.  The assault and battery conviction was not challenged, but it was based on Tucker's struggle after he was arrested.

-

and distraught and gave no indication that he intended violence against the officer with the knife.  From that evidence, it is more likely that Tucker did not realize he had the knife or did not realize its danger.  The evidence tends to prove the officer knocked the knife out of Tucker's hand as a precaution against accident.

Second, Tucker spoke loudly to the officer.  Such speech, however, carries constitutional protection.  "'Speech is often provocative and challenging . . . . [But it] is nevertheless protected against . . . punishment, unless shown likely to produce a clear and present danger of serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'"  Houston v. Hill, 482 U.S. 451, 461 (1987) (quoting Terminiello v. Chicago, 337 U.S. 1, 4 (1949)).  See also Lewis v. City of New Orleans, 415 U.S. 130 (1973).

In Ford v. City of Newport News, 23 Va. App. 137, 474 S.E.2d 848 (1996), we held as follows:

> The words uttered by the defendant, however
> offensive or rude, do not establish
> disorderly conduct.  Although [the officer]
> testified that the defendant "[threw] his
> arms about in the air" and was "loud and
> boisterous," he made no threatening remarks,
> uttered no words that would reasonably
> incite a breach of the peace, or made no
> threatening movements toward the officers.
> While the defendant's remarks lacked
> civility and were impolite, loud, and
> persistent protestations about his
> treatment, his act of throwing his arms in
> the air could in no reasonable way cause or
> incite the officers to violence.  There is

-

> simply no evidence in the record to support a reasonable belief that the defendant's conduct would cause a reasonable officer to respond with physical force or violence or that the officers considered the defendant's throwing his arms in the air to be an assault.

Id. at 144, 474 S.E.2d at 851.

The evidence in this case is similar to the evidence in Ford. It was insufficient to prove Tucker committed any "act of violence or an act likely to produce violence" either by gestures or words. Taylor v. Commonwealth, 11 Va. App. 649, 653, 400 S.E.2d 794, 796 (1991). I would hold, therefore, that the evidence simply failed to prove Tucker's conduct fell within the prohibition of the ordinance. Thus, I would reverse the conviction for disturbing the peace.