COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Bumgardner
Argued at Richmond, Virginia


DEBORA SANTIA DAVIS

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2638-03-2            CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                        OCTOBER 12, 2004
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                        Catherine C. Hammond, Judge

        Dannie R. Sutton, Jr. (Goodwin, Sutton & DuVal, P.L.C., on brief),
        for appellant.

        Susan L. Parrish, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on brief), for appellee.


        Debora Santia Davis (appellant) appeals from her bench trial convictions for assault and

disorderly conduct pursuant to Code §§ 18.2-57 and 18.2-415, respectively.  On appeal, she

contends that neither her speech nor her actions amounted to disorderly conduct.  She also

contends the evidence was insufficient to prove she acted with the intent necessary to commit an

assault.  We hold the evidence was sufficient to support both convictions, and we affirm.

                                                I.

        When considering the sufficiency of the evidence on appeal of a criminal case, we view

the evidence in the light most favorable to the Commonwealth, granting to that evidence all

reasonable inferences deducible therefrom.  Martin v. Commonwealth, 4 Va. App. 438, 443, 358

S.E.2d 415, 418 (1987).  The credibility of a witness, the weight accorded the testimony, and the

inferences to be drawn from proven facts are matters solely for the fact finder's determination.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of the trial court will be disturbed only if plainly wrong or without evidence to support it. See Martin, 4 Va. App. at 443, 358 S.E.2d at 418.

## A.

## ASSAULT

As defined in relevant part by common law, an assault is "an offer to batter." Roger D. Groot, Criminal Offenses and Defenses in Virginia, at 31 (4th ed. 1998). A battery is "an unlawful touching." Adams v. Commonwealth, 33 Va. App. 463, 468, 534 S.E.2d 347, 350 (2000). The touching need not result in injury to be a battery. Id. "'[T]he slightest touching of another . . . if done in a rude, insolent, or angry manner, constitutes a battery . . . .'" Id. at 469, 534 S.E.2d at 350 (quoting Crosswhite v. Barnes, 139 Va. 471, 477, 124 S.E. 242, 244 (1924) (citation omitted)). Thus, this definition of an assault "requires proof of a threat, actual or implied, to batter and an apparent present ability to do so." Groot, *supra*, at 31.

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

> When facts are equally susceptible to more than one interpretation, one which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt an inculpatory interpretation. The fact finder, however, is entitled to draw inferences from proved facts, so long as the inferences are reasonable and justified. Furthermore, the fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary

acts.  Thus, when the fact finder draws such inferences reasonably, not arbitrarily, they will be upheld.

Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998) (citations omitted).

Here, the evidence, viewed in the light most favorable to the Commonwealth, established that Officer Lisa Kusmin (Kusmin) was one of several police officers who responded to a report of "approximately a hundred subjects fighting in the park" near Third Street and Virginia Avenue.  The participants began to scatter, and the officers "spread out through the neighborhood to make sure everybody was leaving the park and not causing trouble."

Another officer initiated a traffic stop.  Appellant walked to the driver's side of the stopped vehicle.  As Kusmin approached her, she became angry and loudly cursed Kusmin.  She repeatedly called the officer a "bitch" and said she did not have to do what Kusmin requested.  She attempted to evade Kusmin when she tried to stop appellant to speak with her and to determine what was in the cup she carried.  When Kusmin and Sergeant Donald Fowler (Fowler) blocked appellant's route of escape, appellant raised her cup above her shoulder and took aim at Kusmin.  Kusmin demonstrated appellant's actions for the court and testified that the cup moved with a whizzing motion rather than a tossing motion and that she thought the cup "was directed at [her]" and "was going to hit her."  Fowler, too, became "alarm[ed]" when appellant "raised her hand," and Fowler "immediately reached out" and made "physical contact" with appellant's left shoulder and arm to throw her off balance.  It took three officers to effectuate appellant's arrest.

This evidence was sufficient to support the trial court's express finding that appellant's actions would have placed a reasonable person in Kusmin's position in fear of receiving a battery and its implicit conclusion that those actions amounted to "a threat, actual or implied, to batter and an apparent present ability to do so."  Thus, the evidence was sufficient to support

appellant's conviction for assault.  That appellant may also have acted with an intent to destroy

evidence by disposing of the contents of her cup does not require a different result.

B.

DISORDERLY CONDUCT

Code § 18.2-415 provides in relevant part as follows:

> A person is guilty of disorderly conduct if, with the intent
> to cause public inconvenience, annoyance or alarm, or recklessly
> creating a risk thereof, he . . . [i]n any street, highway, . . . or
> public place engages in conduct having a direct tendency to cause
> acts of violence by the person or persons at whom, individually,
> such conduct is directed . . . .
>
> However, the conduct prohibited under . . . this section
> shall not be deemed to include the utterance or display of any
> words or to include conduct otherwise made punishable under this
> title.

"The 'question as to whether a particular act is disorderly conduct depends largely on the

facts in the particular case, and in the determination of such question not only the nature of the

particular act should be considered but also the time and place of its occurrence as well as all the

surrounding circumstances.'"  Keyes v. City of Va. Beach, 16 Va. App. 198, 200, 428 S.E.2d

766, 767 (1993) (quoting Collins v. City of Norfolk, 186 Va. 1, 5, 41 S.E.2d 448, 450 (1947)).

Whether the conduct was directed at a citizen or law enforcement officer is also a relevant factor.

Cf. Marttila v. Commonwealth, 33 Va. App. 592, 600-01, 535 S.E.2d 693, 697-98 (2000)

(decided under Code § 18.2-416, Virginia's abusive language statute).  "'[P]roperly trained

police officers . . . are expected to exercise greater restraint in their response [to such conduct]

than the average citizen.'"  Id. (quoting Buffkins v. City of Omaha, 922 F.2d 465, 472 (8th Cir.

1990)).

When considering "all of the facts" and the "surrounding circumstances" the evidence

supports the trial court's findings.  Appellant's nonverbal conduct, her repeated refusals to

- 4 -

comply with Kusmin's requests to stop and her abusive demeanor, which culminated in appellant's forcefully throwing her cup at the officer, supported a finding that appellant's conduct had a direct tendency to cause "an immediate, forceful and violent reaction by a reasonable person" in Kusmin's position. Additionally as the trial court pointed out, the situation on the street was extremely volatile. The police had been called to the area to break up a fight involving over one hundred people, and appellant's actions tended to cause other acts of violence. Thus, we affirm appellant's conviction for disorderly conduct.

II.

For these reasons, we affirm appellant's assault and disorderly conduct convictions.

Affirmed.

Elder, J., concurring, in part, and dissenting, in part.

I concur in the majority's affirmance of appellant's assault conviction. However, I would hold the evidence was insufficient to support the disorderly conduct conviction under the posture of this case.

Code § 18.2-415 provides in relevant part as follows:

> A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . [i]n any street, highway, . . . or public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed . . . .
>
> However, the conduct prohibited under . . . this section shall not be deemed to include the utterance or display of any words or to include conduct otherwise made punishable under this title.

Here, assuming the circumstantial evidence permitted a finding that appellant "recklessly creat[ed] a risk" of "public inconvenience, annoyance or alarm," the evidence failed to establish that the portions of appellant's conduct relied upon by the Commonwealth and the trial court "ha[d] a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct [was] directed." The Commonwealth relied on appellant's inquiry to the occupants of the stopped vehicle--"What are they fucking with you for?"--to prove disorderly conduct. However, the statute expressly provides that "the conduct prohibited under . . . this section shall not be deemed to include the utterance or display of any words." After excluding appellant's loud statement as required by the statute, the remaining evidence simply does not support the conclusion that the accompanying behavior had a direct tendency to incite the vehicle's occupants to violence.

Further, even if we properly could consider the substance of the statement, I would hold the evidence insufficient to prove disorderly conduct. Although a party involving alcohol and a

large fight had just been broken up by police and numerous pedestrians remained in the area, the evidence failed to support a finding that appellant's approaching the vehicle and making that statement in a loud voice "ha[d] a direct tendency to cause acts of violence by" the people at whom appellant's conduct was directed--the occupants of the vehicle, one of whom was appellant's cousin. Although others remained in the area, no evidence established that appellant's behavior and remarks were directed at anyone other than the occupants of the stopped vehicle.

In finding appellant guilty of disorderly conduct, the trial court considered not only "the circumstances of [appellant's] loud remark containing profanity," but also "her refusal to respond to Officer Kusmin's command" to stop and her "cursing Officer Kusmin." In finding the evidence sufficient, the court recited as "elements that the Commonwealth has to prove" only "intent to cause public inconvenience, annoyance, or alarm" and "conduct in a public street that has a tendency to cause acts of violence." The court did not consider whether the conduct tended to cause acts of violence "by the person or persons at whom, individually, [that] conduct [was] directed." Code § 18.2-415. As outlined above, I would hold no evidence established that appellant's conduct toward the occupants of the vehicle had a direct tendency to incite the occupants to violence.

As to the conduct of appellant that was directed toward Officer Kusmin, we previously have held that "'the "fighting words" doctrine may be limited in the case of communications addressed to properly trained police officers because police officers are expected to exercise greater restraint in their response than the average citizen.'" Marttila v. Commonwealth, 33 Va. App. 592, 600-01, 535 S.E.2d 693, 697-98 (2000) (quoting Buffkins v. City of Omaha, 922 F.2d 465, 472 (8th Cir. 1990) (holding as a matter of law that telling a police officer he was an "asshole" while departing airport interview room did not constitute fighting words in absence of

- 7 -

evidence that speaker became violent or threatened violence)).  Applying this standard to reverse

the defendant's conviction for using abusive language in Marttila, we held,

> as a matter of law, that [Marttila's] words did not have the
> necessary "direct tendency" to cause "an immediate, forceful and
> violent reaction by a reasonable person" in the position of the
> police officers at whom the words were directed.  Although
> appellant stiffened up when the officers began to handcuff him, he
> made no threatening gestures and merely expressed contempt for
> the officers in a general sense when he called them "fucking pigs"
> and "fucking jokes" and said they "should be at a fucking donut
> shop."

Id. at 601, 535 S.E.2d at 698.

Similarly in appellant's case, I would hold appellant's calling Officer Kusmin a bitch as

appellant attempted to walk away from Officer Kusmin did not, as a matter of law, have a direct

tendency to cause "an immediate, forceful and violent reaction by a reasonable person" in

Officer Kusmin's position.  Further, appellant's statement to Officer Kusmin that she would like

to meet Officer Kusmin on the street so that she could "beat [Kusmin's] ass," made as Officer

Kusmin and Officer Fowler attempted to handcuff appellant, at a time when appellant was

unable to act on her threat, was not a statement having a direct tendency to cause "an immediate,

forceful and violent reaction by a reasonable person" in Officer Kusmin's position.

The majority concludes appellant's act of throwing the cup at Officer Kusmin, coupled

with the surrounding circumstances, constituted disorderly conduct.  I would hold these acts,

directed at a police officer, were insufficient to prove disorderly conduct under the heightened

standard of Marttila, 33 Va. App. at 600-01, 535 S.E.2d at 697-98.  Further, the Commonwealth

did not argue and the trial court did not consider whether appellant's act of throwing the cup at

Officer Kusmin might have constituted disorderly conduct.  Thus, even assuming the correctness

of the majority's conclusion that such actions would have been sufficient at trial to prove

disorderly conduct, those actions do not provide a basis for upholding appellant's disorderly

conduct conviction in this appeal.  See, e.g., Driscoll v. Commonwealth, 14 Va. App. 449, 451-52, 417 S.E.2d 312, 313 (1992) (holding that appellate court may affirm ruling where trial court reached right result for wrong reason only if alternate basis for affirmance was presented to trial court and no further factual findings are necessary).

For these reasons, I would reverse and dismiss appellant's conviction for disorderly conduct.  Thus, I respectfully dissent from this portion of the majority opinion.