COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


CHARLES MONROE COLLIER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2166-05-2              JUDGE SAM W. COLEMAN III
                                                       MARCH 20, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Beverly W. Snukals, Judge

            Karen Stallard, Assistant Public Defender (Gregory W. Franklin,
            Senior Appellate Defender; Office of the Public Defender, on briefs),
            for appellant.

            Joshua Didlake, Assistant Attorney General (Robert F. McDonnell,
            Attorney General; Josephine F. Whalen, Assistant Attorney General,
            on brief), for appellee.


        Charles Monroe Collier appeals his conviction following a bench trial for misdemeanor

disorderly conduct in violation of Code § 18.2-415.  He contends the evidence was insufficient to

support the conviction because it failed to show that he engaged in conduct having a direct tendency

to cause acts of violence by the persons at whom it was directed.  Finding no error, we affirm the

disorderly conduct conviction.

                                        Background

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Officer Tish Edmonds was working as a security officer at an off-track betting center when she was called to the VIP room where the site manager, Karen Austin, was attempting to evict Collier due to his loud and boisterous behavior. Austin testified that she asked Collier to leave because he was intoxicated and creating a disturbance. Edmonds asked Collier to leave the building. Collier became upset and loud, and he protested that he did not want to leave the building. For about twenty minutes he cursed Edmonds and Austin. Edmonds attempted to issue a summons to Collier after he refused to leave the premises; she explained the summons to him. However, Collier refused to leave or sign the summons. Edmonds informed Collier that if he continued to refuse to sign the summons she would have him arrested and transported to the magistrate's office. Edmonds confirmed that she called for a police officer to report to the scene in the event Collier "got out of hand" and needed to be transported to the magistrate's office. During the forty-five-minute incident, Edmonds asked Collier approximately fifteen times to leave the building. Edmonds testified that during the incident Collier threw the pen and the summons and he kicked "stuff" and pushed chairs before he eventually signed the summons.

The trial court found that Collier "was loud, cursing, pushing chairs, kicking, [and] throwing things" during the incident for which the court convicted Collier for disorderly conduct.

Analysis

When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (citations omitted).

Code § 18.2-415 provides in relevant part as follows:

> A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . [i]n any . . . public building . . . engages in conduct having a direct tendency to cause acts of

violence by the person or persons at whom, individually, such conduct is directed . . . .

* * * * * * *

However, the conduct prohibited under . . . this section shall not be deemed to include the utterance or display of any words or to include conduct otherwise made punishable under this title.

"The 'question as to whether a particular act is disorderly conduct depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances.'" Keyes v. City of Virginia Beach, 16 Va. App. 198, 200, 428 S.E.2d 766, 767 (1993) (quoting Collins v. City of Norfolk, 186 Va. 1, 5, 41 S.E.2d 448, 450 (1947)). Whether the conduct was directed at a citizen or law enforcement officer is also a relevant factor. Cf. Marttila v. Commonwealth, 33 Va. App. 592, 600-01, 535 S.E.2d 693, 697-98 (2000) (decided under Code § 18.2-416, Virginia's abusive language statute). "'[P]roperly trained police officers . . . are expected to exercise greater restraint in their response [to such conduct] than the average citizen.'" Id. (quoting Buffkins v. City of Omaha, 922 F.2d 465, 472 (8th Cir. 1990)).

Code § 18.2-415 requires that an accused's conduct have a "direct tendency to cause acts of violence," not that the conduct, in fact, causes acts of violence. The standard is an objective one, i.e., whether the conduct in question "would cause a reasonable [person] to respond with physical force or violence." Ford v. City of Newport News, 23 Va. App. 137, 144, 474 S.E.2d 848, 851 (1996). The statute, like the "fighting words" statute, serves to prevent conduct that is "likely to provoke a violent reaction and retaliation." Mercer v. Winston, 214 Va. 281, 284, 199 S.E.2d 724, 726 (1973) (discussing Code § 18.1-255, now Code § 18.2-416, prohibiting use of abusive language).

Collier, in arguing that his words and conduct failed to prove a "direct tendency to cause acts of violence" or "would cause a reasonable [person] to respond with physical force or violence," relies on our holding in Ford. In Ford, a police officer asked a man pushing a bicycle to "come over" to him. Ford, 23 Va. App. at 141, 474 S.E.2d at 850. Although Ford complied he became loud and angry, used offensive language, and waved his arms in the air. We held that "[a]lthough the defendant was loud, profane and uncivil, the officers had no basis to conclude, on these facts, that they would be required to use physical force to restrain the defendant in order to carry out their duties." Id. at 145, 474 S.E.2d at 852.

Here, Collier's conduct is more factually analogous to the defendant's conduct in Keyes. In Keyes, an officer stopped Keyes for a traffic infraction. During her encounter with the officer, Keyes "put her hands down . . . balled her fists . . . straightened up" and "just started screaming" at the officer. Keyes, 16 Va. App. at 199, 428 S.E.2d at 767. The officer told Keyes that he would arrest her for disorderly conduct if she did not calm down. In response, Keyes said, "You ain't going to do nothing to me," and demanded the presence of a "real policeman," "screaming the entire time." Id. The officer arrested Keyes because he believed she "was going to fight." Id.

In affirming Keyes's convictions, this Court ruled that "[s]uch willful, intemperate and provocative conduct, in response to proper law enforcement activity, audible for several blocks and visible from a public street, clearly evinced the intent or recklessness contemplated" by the disorderly conduct ordinance. Id. at 200, 428 S.E.2d at 768. Because the officer "reasonably 'felt as though [he] was going to have to fight' to subdue defendant, her behavior had 'a direct tendency to cause acts of violence by the person . . . at whom [it was] directed.'" Id. (citing Burgess v. City of Virginia Beach, 9 Va. App. 163, 167-68, 385 S.E.2d 59, 61 (1989)). The critical difference between Ford and Keyes is that in the latter a reasonable officer would have reason to conclude he

would need to use physical force.  In Ford, a reasonable officer would not have been justified in so concluding.

Similar to the facts here, Keyes's words, conduct, and balling her fists after being stopped for a traffic infraction would lead a reasonable officer to conclude that he would be required to use physical force to deal with the situation.  Here, because Collier threw the pen and summons after having refused to leave and kicked "stuff" and pushed chairs, a reasonable officer in Edmonds's position would have felt that Collier was going to use physical force to resist being evicted.  Indeed, Edmonds called for police back-up, as a reasonable officer would have felt the need to do, when she believed Collier's behavior was getting "out of hand" and she thought Collier would have to be forcibly transported to the magistrate.  See Mannix v. Commonwealth, 31 Va. App. 271, 279-80, 522 S.E.2d 885, 889 (2000) (defendant convicted of disorderly conduct where he disrupted public hearing, disregarded instructions to be seated after refusing to confine comments to topic of hearing, and had to be forcibly removed from premises).

We also find the instant case is distinguishable from Marttila, relied upon by Collier at oral argument.  Marttila was convicted of using violent, abusive language under circumstances reasonably calculated to provoke a breach of the peace.  As officers were arresting and handcuffing Marttila, Marttila "stiffened," refused to comply with officers' demands, and expressed contempt for and cursed the officers.  Marttila, 33 Va. App. at 595, 535 S.E.2d at 695.  Marttila was seated when he began to make these comments and he did not shake his fists, show a weapon or make any verbal threats.  Id.  We held:

> [A]ppellant's words did not have the necessary "direct tendency"
> to cause "an immediate, forceful and violent reaction by a
> reasonable person" in the position of the police officers at whom
> the words were directed.  Although appellant stiffened up when the
> officers began to handcuff him, he made no threatening gestures

and merely expressed contempt for the officers in a general sense
. . . .

Id. at 602, 535 S.E.2d at 698.

Here, by contrast, Collier's actions, coupled with his abusive demeanor and his repeated refusals to comply with Edmonds's requests to sign the summons and leave the premises, and his throwing and kicking objects, supported a finding that Collier's conduct had a direct tendency to cause acts of violence by Edmonds. Accordingly, the evidence was sufficient to support the conviction for disorderly conduct.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.